# Wytheville

## C. H. WALLINGER v. B. G. KELLY.

### June 14, 1923.

1. APPEAL AND ERROR—*Assignment of Error—Laying Finger on the Error—Petition a Pleading.*—A petition for a writ of error is in the nature of a pleading, and it should state clearly and distinctly all errors relied on for reversal. Errors not so assigned will not, as a rule, be considered—the party complaining "must lay his finger on the error."

2. APPEAL AND ERROR—*Assignment of Error—Sufficiency of Petition—Right of Appeal Barred by Limitation.*—The discussion in a petition for a writ of error may be treated as a substantial compliance with section 6346 of the Code of 1919, requiring errors to be assigned in the petition, when the notice to dismiss for failure to comply with the statute is not made until after the right of appeal is barred by limitation, although the motion in itself was not without merit.

3. BILLS, NOTES AND CHECKS—*Action by Assignee of Note—Special Plea of Set-off Claiming Damages to Defendant from Breach of Contract on the Part of the Original Payee.*—In an action by the assignee of a note against the maker, where it was conceded that the assignee occupied no better position in regard to the note than her assignor, the trial court erred in setting aside a verdict for the defendant, because the court allowed the defendant to introduce, under a special plea of set-off filed in the case, evidence objected to by the plaintiff of damages sustained by the defendant by reason of the breach on the part of the original payee of the note sued on, of its counter promise, the performance of which was, according to the uncontroverted evidence, the main or chief consideration for which the note sued on was given and which induced defendant to give the note; notwithstanding that as it turned out on the trial, no issue as to the damages sustained by the defendant need have been tried, because whether the consideration promised the defendant for the note sued on, and which induced him to execute it, failed, presented the only issue which, according to the weight of authority, need have been submitted to the jury.

4. BILLS, NOTES AND CHECKS—*Failure of Consideration—Promise of Employment—Case at Bar.*—In the instant case, an action on a note, the evidence showed that the note sued on was given by the defendant upon the main or chief consideration that the payee should give the defendant a position within a reasonable time, and that the payee

did not give defendant such position. The evidence, without con-
flict, was to the effect that it was a case of mutual and dependent
promises.

*Held:* That the payee of the note, having failed to furnish the main
or chief consideration, even if such failure was due to impossibility,
the defendant payor was excused from paying the note.

5. BILLS, NOTES AND CHECKS—*Failure of Consideration—When Failure
Exists.*—Failure of consideration will exist wherever one, who has
either given or promised to give some performance, fails without
his fault to receive the agreed exchange for that performance.

6. BILLS, NOTES AND CHECKS—*Failure of Consideration—Separate Con-
tracts.*—Though the contract contained in a promissory note and
that contained in the counter promise of the payee are separate con-
tracts, the performances are, nevertheless, intended as equivalent
exchanges for one another, and a failure to perform on one side will
excuse performance on the other.

7. BILLS, NOTES AND CHECKS—*Failure of Consideration—Special Plea of
Set-off.*—In an action upon a note the defendant pleaded failure of
consideration and sought by a special plea of set-off to be compen-
sated in damages for breach of the contract on the part of the payee
of the note sued on, which was the main consideration for the note.

*Held:* That under section 6145 of the Code of 1919 defendant had a
right to do this.

8. BILLS, NOTES AND CHECKS—*Failure of Consideration—Special Plea of
Set-off—Time of Filing.*—In an action upon a note the defendant
pleaded failure of consideration and sought by a special plea of set-
off to be compensated in damages for breach of the contract on the
part of the payee of the note sued on, which was the main considera-
tion for the note. The plea was filed nearly two months before trial,
giving the opposite party ample time to prepare for trial.

*Held:* That the determination of the question as to whether the plea
was tendered in time rested in the sound discretion of the trial
court, and that in allowing the plea there was no abuse of this dis-
cretion.

9. BILLS, NOTES AND CHECKS—*Failure of Consideration—Special Plea of
Set-off—Sufficiency and Definiteness.*—In an action upon a note the
defendant pleaded failure of consideration and sought by a special
plea of set-off to be compensated in damages for breach of the
contract on the part of the payee of the note sued on, which was the
main consideration for the note. It was objected that the plea did
not set out the things alleged with sufficient precision and certainty.

*Held:* That though there should be such precision and certainty, and
the plea alleged both failure of consideration and fraud, yet in view
of the circumstance that the plea was not filed until after the first
trial of the case, it was plain that the allegations were sufficiently
precise.

10. FORMER ADJUDICATION OR RES ADJUDICATA—*Abatement and Revival—
Mere Pendency of Another Action.*—The mere pendency of one action

against a defendant cannot be pleaded in bar of recovery in another action in the same court by the same plaintiff, even where it is against the same defendant. The well-settled rule is that there cannot be a double recovery; that actual recovery in the one action will *pro tanto* bar recovery in the other; but, prior to any recovery, the remedy of the defendant, to avoid being vexed with and put to the expense of preparing for trial in two proceedings, in the same court, is to move the court to require the plantiff to elect which action he will prosecute.

11. FORMER ADJUDICATION OR RES ADJUDICATA—*Abatement and Revival— Mere Pendency of Another Action.*—Indeed, even where there are several actions, strictly *in personam,* in which nothing more than a personal judgment is sought, pending at the same time in different State courts, or in State and Federal Courts, the mere pendency of the one cannot be pleaded in bar of the other.

Error to a judgment of the Circuit Court of Hanover county, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed and final judgment entered.*

. This is an action brought by the defendant in error (hereinafter called the plaintiff), the assignee of a certain negotiable note of the plaintiff in error (hereinafter called defendant, or Wallinger), dated September 16, 1918, payable to the Normon Motor Truck Corporation, or order, three months after date, for the sum of $507.50 (that being a renewal note given to take up the original note executed by the same maker in favor of the same payee for $500, payable September 16, 1918, mentioned in the letter of defendant of date December 31, 1917, appearing in evidence), to recover of the defendant the sum of $559.38 with interest thereon from December 16, 1918, being the amount of said first mentioned note, together with interest and protest fees, alleged to have been due and payable, but not paid by the said defendant on such last named date or at any time thereafter.

There were two trials of the case by jury. The first trial resulted in a verdict for the defendant, which the court set aside and granted a new trial. The second trial also resulted in a verdict for the defendant, which the court set aside and thereupon entered final judgment for the plaintiff for the said sum of $559.38 with interest thereon from December 16, 1918, until paid.

It is admitted in the brief for the plaintiff, and was likewise admitted in oral argument in her behalf before us, that the plaintiff "occupies no better position with respect to the note sued on than did her assignor, the corporation" (the said Normon Motor Truck Corporation); it being conceded that she must be regarded as "an assignee of the note with notice of all of the facts."

In view of the conclusion reached in the opinion, the proceedings and facts shown in evidence, etc., on the second trial only will be referred to.

Among the grounds of defense filed by the defendant at the November term of court, 1919, a year prior to the second trial, was the following:

That the consideration promised the defendant for the said note, and which induced him to execute it, failed.

At the September term of court, 1920, nearly two months before the second trial, the defendant, by leave of court, over the objection of the plaintiff, also filed the following special plea verified by affidavit:

*"Special Plea of Set-off.*

"And the said defendant, by his attorney, comes and says that before the making of the said writing in the said notice of motion mentioned, to-wit: in December, 1917, the said defendant was induced by one R. W. Crawford, president of the Normon Motor Truck

Corporation, by promising him employment by said corporation at a salary of $1,800.00, to purchase certain shares of the capital stock of said corporation and to execute two notes in payment for the same. This promise of employment in a short time induced said defendant to buy said stock and execute said notes to said corporation. Defendant avers that said promise was made by said Crawford to induce said defendant to buy said stock and execute said notes, knowing that there was no likelihood of the corporation ever engaging in business or of giving defendant the said employment. And said defendant avers that the said corporation has never engaged in business nor has it ever employed said defendant, though said defendant has at all times been ready and willing to enter into said employment, and has offered to do so time and again. When the first of said notes given said corporation fell due, defendant still relying on said promise of employment, paid it, but when the second fell due he renewed it, hoping that he might get the employment promised him. Finally losing confidence in said Crawford and his corporation, he notified said Crawford that he would not pay said note sued on when it should become due, because of his failure to get said employment. Whereupon said Crawford took said note to Ohio and fraudulently assigned it to B. G. Kelly, the said plaintiff, without recourse in any event. Defendant avers that said plaintiff paid little or no consideration for said note, and if she paid anything, the same has been returned to her and she has no further interest in said note. Defendant further avers that said transfer was fraudulently made to force defendant to pay the note and that said plaintiff had reason to believe that such was the case if she did not actually know of it. And said defendant avers that he received no consideration for said note sued

on as shown above. And by reason of the premises he has sustained damage to the extent of the amount sued for as against plaintiff, to-wit: $559.83, with interest claimed, and which is unpaid, and he is ready and willing and hereby offers in pursuance of the statute in such cases made and provided to set off and allow the same against the said sum of money claimed by the plaintiff in his said notice of motion. And this the said defendant is ready to verify."

The following appeared in evidence on the second trial:

The defendant introduced in evidence the following letters, together with the notations appearing at the foot of the letters:

"December 31, 1917.

"Mr. R. W. Crawford, President,

"Normon Motor Truck Corporation,

"Doswell, Va.

"Dear Sir:

"Confirming our conversation of today, I hereby accompany my application for the position of superintendent of construction for your corporation with application for 100 shares of the preferred stock, with this I understand I am to receive as a bonus fifty shares of the common stock, for all of which please find enclosed two notes dated January 2, 1918, as follows:

"One note for $500.00 to fall due on March 15, 1918. Interest six per cent.

"One note for $500.00 to fall due on September 16, 1918.

"All said stock is to be dated as of January 2, 1918, one-half to be delivered to me on payment of first note and the other half on payment of second note.

"Should my application for the position applied for be rejected, please be so kind as to return the notes.

"If I am favored with the position it will be my purpose and desire to direct my utmost efforts towards the advancements of the best interest of the corporation in any direction in which I may prove useful, not limiting my services to work coming directly under the head of construction.

"In order that I may leave my present employment in a proper way a notice of thirty days will be appreciated.

"Very sincerely yours,
"C. H. Wallinger.

"Accepted January 15, 1918.
"Normon Motor Truck Corporation,
"By Robert W. Crawford, President.
"Attest:
"Thomas A. Fuguson, Secy.

"Doswell, Virginia, February 5, 1918.

"Mr. C. H. Wallinger,
"R. F. D. No. 1,
"Doswell, Va.

"Dear Sir:

"I am referring to your letter dated December 31, 1917, and also to conversation we had today, which is mutually agreed by us, and wish to advise that under the conditions outlined your proposition has been accepted by my corporation, the only changes being made are as follows: The corporation accepts your notes and instead of holding the stock as per the agreement we are turning over to you today:

"Preferred Stock Certificate No. 22, fifty shares.

"Preferred Stock Certificate No. 23, fifty shares.

"Common Stock Certificate No. 31, twenty-five shares.

"Common Stock Certificate No. 32, twenty-five shares.

"All fully paid and non-assessable as shown on the face thereof.

"Trusting you will take up the notes at maturity, I wish to remain

"Very respectfully,

"Normon Motor Truck Corp.

"By R. W. Crawford, Pres.

"C. H. Wallinger,

"Accepted."

Further:

When the first note mentioned in the letter of December 31, 1917, for $500.00 became due on March 15, 1918, Wallinger paid it; when the second note for $500.00 became due on September 16, 1918, he renewed it by giving the note on which this suit was brought. Crawford subsequently took this note to Lima, Ohio, and sold it to Mrs. B. G. Kelly, the plaintiff.

The defendant, C. H. Wallinger, testified in his own behalf on direct examination as follows:

"I reside in Hanover county, about seven miles from Doswell; am the defendant in this case. I first met Mr. R. W. Crawford about the first of December, 1917, when he came to my house on a Sunday night with a Mr. Hackett who was out driving with some young friends. While there, Crawford spoke of the Normon Motor Truck Corporation starting a plant at Doswell. Was at my home about an hour and discussed the plant the most of the time he was there. He pictured the business as a very promising one. After he left it occurred to me that I might get a situation with the corporation, and in a few days I wrote the letter of December 4, 1917, making application for the place. In about two weeks I received his letter of December 17, to

which I replied on December 19. He wrote me the letter of December 20, asking an interview on December 24. I met him on that date and he said that we could get together, but it would be necessary for me to take $3,000.00 to $5,000.00 worth of stock in the corporation. After thinking the matter over, I wrote him on December 27, stating that I could take only $1,000.00 worth of stock, and on time payments. We had an interview in a day or so and agreed upon the terms embodied in my letter of December 31, which was accepted by the company, and I executed the notes as stated in letter. On February 5, 1918, he wrote me the contract was accepted except keeping the stock, etc. On March the 13th he wrote me asking an interview at Doswell. I took up the first note when it fell due and at that time asked him when I was to begin work. He said, 'You can begin to get ready now.' I asked him what he meant by that. He said 'about a week, and that I could make my arrangements accordingly.' I then notified the King Chain Stores, where I was employed at $1,800.00 a year, that I would leave them and did so in about a week. Mr. Crawford then put me off from day to day about starting and on March 30 I wrote him. He wrote me in reply on April 6. I do not recall seeing him on the 14th; could see him but very seldom after that. He attributed his failure to get started to war conditions, but never refused to give me the position; kept putting me off with the promise that he would start soon. In the meantime he had put up some sheds and a sawmill on the property, no manufacturing buildings at all. About June I began to lose hope. I had paid the first note and felt that I must be as nice to him as possible as I could not afford to lose it. I wrote him on June 23rd and he wrote me June 28th saying the railroad was to

blame.   On August 26th I wrote him asking an inter-. view about the note falling due September 16th.   Not hearing from him I wrote again September 11th about the note.   He was in and out all the time and it was a hard matter to catch him.   He wrote me on September 12th and asked me to see him on the 15th, which I' did, and following up our interview I renewed the note and wrote him on September 16th.   My reason for doing this was that I was out of pocket $500.00 and was still somewhat hoping to get the situation and did not want to complicate matters.   On October 28th I wrote him stating that I could no longer wait and asked for cancellation of contract, stating that I had suffered loss in giving up my former position.   He did not reply and I wrote him again November 21st, setting forth my financial condition and asking return of $500.00.   He never replied to this letter, but on November 25th wrote me a reply to letter of September 16th.   On December 9th I wrote him in reply and refused to accept the stock, returning it to him.   I did not pay the note due December 16th for $507.50.   It was protested and on January 10th Mr. Doswell wrote me he had the note for collection then owned by B. G. Kelly.   I did not know till then that he had assigned the note.   Notice of this suit was served on me on the 27th of February and I turned it over to my attorney."

On cross-examination Wallinger testified as follows:

"That the first visit of Crawford to see him was purely a social visit, and that he, Crawford, made no effort to sell him stock then; that the first business transaction between them was the result of his approaching Crawford; that it is true that Crawford was away from Doswell much of the time, apparently or ostensibly on business for the corporation; that it is true that business conditions were such that it was

difficult to get much done during the year 1918; that Crawford never gave him a specific date as the time he would give him a position, but that Crawford did make such a statement as 'I will need you in about a week,' 'you can begin to get ready.' "

The letter of October 28, 1918, referred to in the foregoing testimony of the defendant, was as follows:

"Doswell, Va., October 28, 1918.
"Mr. R. W. Crawford, President,
　　　"Normon Motor Truck Corporation,
　　　　　"Doswell, Va.
"Dear Sir:

"On September 15th, by a pre-arranged engagement, I called on you at Doswell and made verbal explanation of what I had previously written you repeatedly regarding my financial difficulties which made it impossible for me to longer wait for you to assign me to duty with your company. You could give me no satisfaction at that interview.

"On October 6th I again called on you and advised you that I had been offered a business connection in Richmond, and while you could not then even hazard a guess as to when my services would be required, you promised to write me from Washington within that week or call on me the following Sunday to let me know what you had been able to accomplish regarding the contract for rebuilding cars for the Chesapeake and Ohio Railway Company. On this the 28th day of October I am still without the courtesy of a communication from you. It would seem proper under ordinary business rules that you should at least have written me the status of things.

"Your silence on this and former occasions has tended to make me feel that either the fulfilment of the terms of our business agreement is to be indefinitely

postponed, or that you feel indifferent towards me, and in either case I considered it necessary and advisable to accept the Richmond offer.

"I now, therefore, formally advise you that nearly a year ago, acting in accordance with your requirements, I purchased $1,000.00 worth of the stock of your company, on condition that I be given a certain position with your company at a stipulated salary. It was then contemplated by both parties to the agreement that I should begin work within a few weeks at most. In February of this year you gave me a verbal notice by stating that I might 'begin to get ready.' I asked you what this meant. You replied that you would probably need me within a week. I have had no appreciable income from that time on and have therefore suffered heavy loss due to the uncertainty of waiting for a position which has not developed into practical reality.

"Under the foregoing circumstances, having been compelled to make some other arrangements, I beg to ask you that the $500.00 paid by me for stock be returned to me at once and that my note of September 17th, for $500.00 and interest, be cancelled and returned to me, and that I be allowed to return to you all the stock of your company which I was required to purchase.

"This letter is not written with any feeling of bitterness but is merely a friendly but positive demand arising out of the failure of your company to comply with the terms of the agreement.

"Wishing you and your company full success, assuring you of my continued good will and my best word for you whenever I may be of service, also regretting keenly that I could not have the pleasure of serving you in an active capacity, I beg to remain

"Yours truly,     C. H. Wallinger."

The above-mentioned evidence in behalf of the defendant was admitted without objection on the part of the plaintiff. After such evidence had been introduced, however, the jury was sent out, and during the course of the argument upon the instructions the court, on motion of the defendant therefor, decided to give an instruction to the effect that the jury should allow against the obligation of the note sued on such damages as the defendant may have proved by a preponderance of the evidence that he had sustained by reason of the alleged breach of contract on the part of the corporation payee of said note. The plaintiff objected to the giving of such instruction "on the ground that such damages, if any existed, could not be proven under the special plea of set-off which had been filed, and upon the further ground that there was no evidence of any such damage introduced in the case." But the court, on the jury being recalled, gave such instruction, and, over the objection of the plaintiff, permitted the defendant to again take the witness stand and further testify as follows:

"That he had been damaged to the extent of $150.00 per month for nine and one-half months in addition to the note he had paid." Thereupon, the plaintiff, by counsel, moved the court to strike out that evidence, which motion was overruled and the plaintiff by counsel excepted, and the plaintiff, without waiving the said objection then cross-examined the witness, who testified on such cross-examination as follows: "That he did not make any money during that nine and one-half months; that he did not do anything but was waiting for the position with the corporation; that he was making at the time of the trial the sum of $1,800.00 per year; that he had instituted a suit in the court of Hanover county against the said Normon Motor Truck

Corporation on the_____day of_____,
1919, for the sum of $2,000.00, for damage claimed to be
due him on account of the alleged breach of the said
contract by the said corporation; and that suit was still
pending in the said court."

One of the certificates of the trial judge shows the
following with respect to the verdict of the jury on
the second trial:

That on the second trial of this case the jury first
returned the following verdict: "We, the jury, on the
issue joined, find for the defendant and assess his dam-
age at $559.83 with interest on $507.50 from December
16, 1918;" that the court being of the opinion that the
form and substance of the verdict was so indefinite and
uncertain that no judgment could be entered thereon,
interrogated the jury as to the meaning of the said
verdict; that in reply to one of the questions by the
court, one of the jurors said, "We did not consider the
question of how much damage the defendant may have
suffered on account of any breach of the contract, but
just decided that the plaintiff was to get nothing."
That after interrogating the jury, the court wrote the
following verdict: "We, the jury on the issue joined,
find for the defendant, that is we allow the offset in
damages claimed by said defendant of $559.38 with
interest from December 16, 1918, as against the note
sued on;" that the jury thereupon, without being sent
to their room, but in open court, stated that that was
their verdict, and the foreman signed the same; and
that the plaintiff, by her attorney, objected and ex-
cepted to the verdict and to the court's acceptance of
the same.

Thereupon the plaintiff moved the court to set aside
such verdict as contrary to the law and the evidence.
That motion was continued and subsequently the court

entered the final order embodying the aforesaid judgment under review, which order is as follows:

"This day came the parties by their attorneys, and thereupon the plaintiff, by her attorney, renewed her motion to set aside the verdict of the jury rendered in this case at the November, 1920, term of court, assigning as additional ground therefor error committed by the court in allowing the defendant, over the objection of the plaintiff, to introduce evidence of damages sustained by the said defendant by reason of an alleged breach on the part of the Normon Motor Truck Corporation of a certain contract made between it and the said defendant under the special plea of set-off filed in this case, and in allowing the said defendant to prove such damage and set-off the same against the demand of the said plaintiff; and the court having heard argument on said motion, doth sustain the same and doth order that the said verdict be, and the same is hereby, set aside. And thereupon the plaintiff, by her attorney, moved the court to enter final judgment in this case in her the said plaintiff's favor against the said defendant for the amount of her claim, to-wit: $559.38, with interest thereon at the rate of six per centum per annum from the 16th day of December, 1918, until paid, in lieu of granting her a new trial, in accordance with the law in such cases made and provided; and the court having heard argument on said motion, and being of the opinion that it is right and proper to do so, doth adjudge and order that the plaintiff do recover of the defendant the sum of $559.38, with interest thereon at the rate of six per centum per annum from the 16th day of December, 1918, until paid, and her costs by her about her suit in this behalf expended."

In the brief and oral argument for the plaintiff, motion was made to dismiss the appeal, on the ground

that the petition for the writ of error contains no specific statement of the errors assigned.

*C. W. Throckmorton*, for the plaintiff in error.

*Andrew J. Ellis*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the motion to dismiss and by the petition for the writ of error will be disposed of in their order as stated below.

1. Does the petition for the writ of error sufficiently "assign errors" so as to satisfy the requirement of the statute on the subject (section 6346 of the Code)?

The question must be answered in the affirmative.

[1, 2] It is true, as urged in behalf of the plaintiff on the question under consideration, that it is well settled that a petition for a writ of error is in the nature of a pleading and that it should state clearly and distinctly all errors relied on for reversal, and errors not so assigned will not, as a rule, be considered—the party complaining "must lay his finger on the error." Burks Pl. & Pr. (2d ed.), pp. 770-1; *Puckett's Case*, 134 Va. 574, 113 S. E. 853, and authorities there cited. But, as held in *New York Life Ins. Co.* v. *Franklin*, 118 Va. 418, 87 S. E. 584, the discussion in the petition may be treated as a substantial compliance with the statute, when the notice to dismiss for failure to comply with the statute is not made until after the right of appeal is barred by limitation; and such is the case before us. The motion to dismiss first appears in the brief for the plaintiff, which was filed November 14, 1922, which was after the right of appeal was barred by the statute

on the subject, and the motion was not called to our attention until some time thereafter, upon the oral argument of the case.   And while we must say of the motion to dismiss in the instant case, as was said of such motion in the case just cited, namely: "The motion is not without merit, for the petition does not in any concise or satisfactory manner point out the precise grounds upon which it seeks a reversal of the judgment"—for the reason just stated, the motion to dismiss will be denied.

[3] 2. Did the court err in setting aside the verdict upon the second trial as contrary to the law and the evidence, or because the court allowed the defendant to introduce, under the special plea of set-off filed in the case, the evidence objected to by the plaintiff, of damages sustained by the defendant by reason of the breach on the part of the original payee of the note sued on, of its counter-promise, the performance of which was, according to the uncontroverted evidence, the main or chief consideration for which the note sued on was given and which induced the defendant to give the note?

The question must be answered in the affirmative.

[4] It is true that, as it turned out on the trial, upon the development of the facts in evidence, no issue as to the damages sustained by the defendant need have been tried.   For, aside from the question of whether the defense of failure of consideration could be made as against the plaintiff assignee (which, in view of the admissions stated preceding this opinion, is no longer a question in the case), in view of the uncontroverted evidence to the effect that it was a case of mutual dependent promises (the promise of the defendant to pay the note which he did pay and also the note sued on, and—as the main or chief consideration for the payment of said notes—the promise of the plaintiff's as-

signor to give the defendant the position, stipulated for when he gave the notes), the ground of defense, that the consideration promised the defendant for the note sued on, and which induced him to execute it, failed, presented the only issue which, according to the weight of authority, need have been submitted to the jury in order for them to have properly decided the case on the merits. Upon that issue the law and the evidence was, as was developed on the trial, ample to support the verdict in favor of the defendant.

The evidence, without conflict, was to the effect that the aforesaid promises were not independent, but mutually and dependent promises. That the note sued on was given by the defendant and delivered upon the expressly stipulated condition (which was the chief consideration moving the defendant to give that note and also the other note which he gave), that the original payee of the note sued on would give the defendant the position mentioned in his application therefor, and referred to in the letter of December 31, 1917, in evidence; and it was also stipulated by the defendant at the same time, as appears from such letters, that he should be given thirty days' notice of the time when the position would be given him. By the acceptance of the defendant's proposition and the notes given by him, as shown in evidence, the said payee promised to give the defendant the position within a reasonable time, and to subsequently give him thirty days' notice before that time arrived. In his testimony before the jury the defendant stated that when he took up the first note which fell due (on March 15, 1918), he asked the president of the said payee when he was "to begin work;" that the president said: "You can begin to get ready now;" that he asked the president just what he meant by that, and the president said: "About a week,

and that I (the defendant) could make my (his) arrangements accordingly." This, in the light of the accepted stipulations aforesaid, fixed definitely the time at which the said payee promised to give the defendant the position, namely, within thirty days from March 15, 1918. It is true that, as shown by the evidence, by his acquiescence thereafter in the default of the said payee in the completion of the contract in such particular, the defendant assented to the postponement of the time for such completion of the contract for a reasonable time after the last named date; but the evidence was ample to support the jury in finding that reasonable time expired prior to October 28, 1918, and that the defendant had the right, as of such date, to treat the contract aforesaid as broken by the failure of the said payee to furnish the consideration aforesaid as promised; and the defendant accordingly elected to treat the contract as so broken, as evidenced by his letter of that date so notifying the said payee. And, as above indicated, it is manifest that the jury were warranted in finding from the evidence that the promise of the payee of the note sued on to furnish the position aforesaid, was the main and moving consideration which induced the defendant to give the note sued on and the note which he paid, and that the part performance of the contract on the part of the payee, consisting of the delivery of the stock, was of minor importance; and that payment by the defendant to said payee of the note for $500.00 first falling due more than covered the value to the defendant of the stock received by him from such payee.

Such being the facts, as the evidence warranted the jury in finding them, the law is well settled that, the payee of the note sued on having failed to furnish the aforesaid promised main or chief consideration there-

for, even if such failure was due to the impossibility for any reason of the furnishing of the consideration, the defendant payor was excused from paying the note sued on.     2. Williston on Contracts, sections 814, 824, 840, 885, 841 and 842.

[5] In section 814 of the valuable work just cited this is said: "*     * Failure of consideration     *     * will exist wherever one, who has either given or promised to give some performance, fails without his fault to receive the agreed exchange for that performance.     Thus one who had paid $500.00 in return for an agreement to transfer a horse to him, fails to receive the consideration or exchange for his $500.00 if the horse is not transferred.     *     *     * The reason why the horse is not transferred may be due to excusable impossibility (as if the horse should die before the title was transferred), or it may be due to a breach of duty on the part of the seller.     In either case the buyer may recover his payment.     *     *     * If the buyer has not yet paid the price for the horse at the time of his death, the consideration or exchange for the payment has failed, and, similarly, if the seller wrongfully breaks his promise to transfer, the buyer is not getting the exchange or consideration for the payment which he had agreed to make.     And as the buyer might reclaim the price if it had already been paid, *a fortiori*, he is excused from keeping his promise to pay it, if not yet paid."

[6] Of the holding of the American authorities on the subject in section 840, *supra*, of the same work last quoted, this is said: "*     * Though the contract contained in a promissory note and that contained in the counter promise of the payee are separate contracts, the performances are, nevertheless, intended as equivalent exchanges for one another, and a failure to perform on one side will excuse performance on the other.'"

In section 885, *supra*, of the same work, this is said: "It may seem that where performance on one side of a contract is precedent to that on the other, and the time for the prior performance has arrived and, no defense then existing, a right of action has arisen, this right of action cannot afterwards be destroyed   \*   \*. Such, however, is not the case. Circumstances may subsequently arise which would justify the recovery back of the prior performance, if it had been given, and therefore, if it had not been given, but a cause of action for it arisen, to avoid circuity of action the court will deny recovery."

And in sections 841 and 842, of the same work, on the subject of the right of the parties where the breach of contract consists of the failure to furnish, not the whole, but only a part of the consideration for a promise of the injured party, this is said:

"Section 841. Part performance on one side.—Lord Mansfield decided, soon after his recognition of the dependency of promises in bilateral contracts, that where there had been part performance by the plaintiff and a breach of promise by him went only to part of the consideration, and could be compensated in damages, the plaintiff might recover in spite of such breach." (Citing *Boone* v. *Eyre*, 1 H. Bl. 273, N.) "The principle thus established has been uniformly followed.

"It has been said, however, that 'There is a great difference in the authorities in the application of the doctrine of implied conditions precedent in a contract, \* \*' where there has been part performance. This difference appears particularly upon the question as to the measure of performance by one party which is to be regarded as such substantial performance as will protect him from having his defaults considered as breaches of such a condition, and also upon the corresponding

question as to the kind of default which so far goes to the essence of the consideration as to justify the other party in refusing to go on with the contract.

"In the nature of the case precise boundaries are impossible. The question which must be decided is whether on the whole it is fairer to allow the plaintiff to recover, requiring the defendant to bring his cross-action or counter-claim for such breach of contract as the plaintiff may have committed, or whether it is fairer to deny the plaintiff a right of recovery on account of his breach, even at the expense of compelling him to forfeit any compensation for such part performance as he has rendered. The decision of this question must vary with the special circumstances of each case. Nevertheless some principles may be laid down. Where several promises are made by one party, a breach of one of them necessarily goes only to part of the consideration, but it may be a large part, or it may be a small part. A breach of a separate collateral promise of minor importance will not justify refusal by the other party to perform, if the main promise to him has been or is being substantially performed. On the other hand, even though the breach occurs after part performance, if it is of such a material or essential character as to go to the root of the contract, further performance by the injured party is excused.

"Section 842. Substantial performance.—The principle of part performance in dependent promises may be expressed, either by saying that a breach which is material, or which goes to the root of the matter, or essence of the contract, is fatal to the plaintiff's case, in spite of his part performance; or it may be expressed by saying that a plaintiff, who has substantially performed, is entitled to recover, although he has failed in some particular to comply with his agreement."

[7] But, in view of the state of the law, indicated by the quotations above from section 841 of Williston on Contracts, it may be readily understood why counsel for the defendant preferred not to rest his case wholly upon the ground of defense of failure of consideration, and sought by the special plea and evidence of damages introduced to assert the right of the defendant, under the aforesaid doctrine of *Boone* v. *Eyre,* mentioned by Williston, to be compensated in damages for the breach of the contract on the part of the said payee of the note sued on, to the extent of the amount sued for by the plaintiff, and to set up such damages in the cross-action instituted by the special plea, by way of recoupment and as a set-off against the plaintiff's demand in the case in judgment; rather than waive such claim in such case and set it up by an independent action for such damages, in the event that the defendant failed to sustain by his proof the issue tendered by the ground of defense, aforesaid, of failure of consideration. And we are of opinion that the defendant had the right to do this under the express provision of the statute of recoupment (section 6145 of the Code).

[8] The objection urged in the brief and argument for the plaintiff, that the special plea was not tendered in time, is without merit as the determination of that question rested in the sound discretion of the trial court, and we think there was no abuse of that discretion in the instant case, as the plea was filed nearly two months before the second trial, giving the opposite party ample time within which to prepare for trial upon the issue tendered by the plea.

[9] We are of opinion that the objection also urged, that the plea does not set out the things alleged in the plea, as matters entitling the defendant to the damages therein asserted, with sufficient precision and certainty

to apprise the plaintiff of the nature of the defense intended to be made, is likewise without merit. It is true that there should be such precision and certainty in the allegations of such a plea. *Burtners* v. *Keran*, 24 Gratt. (65 Va.) 42. But, while the plea alleges both fraud and failure of consideration as matters entitling the defendant to the damages claimed as is expressly allowed to be done by the statute (section 6145), when it is remembered that the plea was not filed until after the first trial had been had, in which the defendant fully developed in evidence all the details of the matters alleged in the plea, it is plain that the allegations of the plea were sufficiently precise and definite to apprise the plaintiff of the nature of the defense thereby intended.

[10, 11] It is also urged in objection to said plea, and to the proving by the plaintiff of damages thereunder, that, as appears from the defendant's testimony on the second trial, he had then pending, in the same court in which the instant case was being tried, an action against the Normon Motor Truck Corporation, the payee aforesaid, for damages claimed to have been occasioned the defendant by the breach by that party of the same contract as is involved in the instant case. But we find no merit in such objection. The mere pendency of one action against a defendant cannot be pleaded in bar of recovery in another action in the same court by the same plaintiff even where it is against the same defendant. The well settled rule is that there cannot be a double recovery; that actual recovery in the one action will *pro tanto* bar recovery in the other; but, prior to any recovery, the remedy of the defendant, to avoid being vexed with and put to the expense of preparing for trial in two proceedings, in the same court, is to move the court to require the plaintiff to elect

which action he will prosecute.   And, if the objection
to the plea and to the introduction of evidence there-
under aforesaid could be considered as, in substance,
such a motion on the part of the plaintiff, the action
of the defendant in the premises evidenced his election
to prosecute his cross-action, instituted by the special
plea, for the recovery of the damages thereby claimed.
Indeed, even where there are several actions, strictly
*in personam*, in which nothing more than a personal
judgment is sought, pending at the same time in differ-
ent State courts, or in State and Federal courts,
the mere pendency of the one cannot be pleaded in bar
of the other.    *Kline* v. *Burke Construction Co.*, 43 Sup.
Ct. 79, 67 L. Ed. ——.

With respect to the evidence of the damages in ques-
tion objected to by the plaintiff on the second trial, this
perhaps should be also said: While not so specific as to
the precise amount of such damages, there was ample
evidence furnished by the testimony of the defendant
on the subject, which was not objected to, to support
the verdict of the jury in the particular of the amount
of the damages.    Further: Such evidence, which was
objected to, was, as follows from the views we have
expressed above, properly admitted under the special
plea.

We are, therefore, of opinion that the first views of
the learned trial judge on the subject under considera-
tion were correct, and that the trial court committed
no error in allowing the special plea to be filed and in
permitting the evidence touching the damages therein
claimed to go to the jury; that the verdict on the second
trial, as explained by the colloquy between the trial
judge and the jury, appearing in the record and set out
in the statement preceding this opinion, was, in sub-
stance, correctly responsive both to the issue tendered

by the aforesaid ground of defense of failure of con-- sideration and to the issue tendered by the special plea of set-off; that such verdict, both as it was in substance and as it stood in its final form, as written by the judge, was amply supported by the evidence and sustained by the law; and that the trial court was in error in setting such verdict aside and in entering judgment for the plaintiff. The judgment under review will, therefore, be set aside and annulled, and this court will enter final judgment for the defendant, in accordance with the form of said verdict, viz., to the effect that the set-off in damages claimed by the defendant, equal in amount to the sum of $559.38 with interest thereon from De-- cember 16, 1918, sued for by the plaintiff, is allowed in satisfaction of the plaintiff's demand, and that the action of the plaintiff be dismissed, with costs to the defendant.

*Reversed and final judgment entered.*