# CHARLESTON.

CITIZENS TRUST & GUARANTY COMPANY OF WEST VIRGINIA
v. GOFF *et al.*

Submitted November 13, 1917.   Decided November 20, 1917.

PRINCIPAL AND SURETY—*Action Against Surety—Estoppel.*

When a creditor (a sheriff in this case) knows that the surety of his debtor (his deputy in this case) is urging such debtor to make final settlement of his accounts, and later and pursuant to correspondence had with debtor and creditor, such final settlement is made, and as evidence thereof the creditor gives the debtor, while solvent, a receipt in full for all charges against him as such deputy, which is then delivered by the debtor to his surety as evidence of such final settlement and discharge of his bond, the creditor will, after the lapse of five years or more, and the insolvency of his debtor, be estopped from setting up a different state of facts, and from pursuing such surety on the bond of his debtor for an alleged default of the latter, and for a balance alleged to be due him because of mutual mistakes in their settlements.

Appeal from Circuit Court, Roane County.

Suit by the Citizens' Trust & Guaranty Company of West Virginia against H. F. Goff, late Sheriff of Roane County, and others. Decree for defendant Goff, and the plaintiff appeals.

*Reversed, and decree entered here.*
81 W. Va.

*W. H. Bishop,* and *Pendleton, Mathews & Bell,* for appellant.

*Geo. F. Cunningham* and *Harper & Baker,* for appellee.

MILLER, JUDGE:

By its present bill plaintiff, upon grounds of equitable estoppel, presently to be stated, sought to enjoin defendant Goff, late Sheriff of Roane County, from the further prosecution against it of his certain proceeding at law upon notice for judgment upon the bond of S. I. Snodgrass, late deputy sheriff under him, as principal and plaintiff as his surety, dated September, 1915, and conditioned for the faithful discharge by Snodgrass of his duties as such deputy, and for properly accounting for and paying over as required by law all moneys which might come into his hands by virtue of his office.

The basis of said action so sought to be enjoined, as alleged, is two judgments, recovered against Goff and the sureties on his bond, in January, 1915, by the boards of education of the districts of Curtis and Reedy in said county, the districts in which said Snodgrass as such deputy, during the term of his office, collected and disbursed for Goff the public taxes, and aggregating about $1,200.00, and paid by Goff.

In Goff's answer to the bill he charges that these judgments against him were for balances found due from him to said boards of education upon an audit of his accounts by the State Tax Commissioner, occurring in 1914, and the result of alleged mutual mistakes in his favor, and in favor of Snodgrass, in the annual and final settlement of their accounts, and which he alleges was as much the fault of Snodgrass as of himself and of their private accountant and of the commissioners appointed by the county court to make such settlements, and represented moneys collected by said Snodgrass in said districts which should have been charged against and accounted for by him, but which, as disclosed by said audit, had not been included in their said settlements.

The grounds of equitable estoppel alleged and relied on in the bill are that plaintiff was surety on the private bond

of said Snodgrass executed to Goff individually, not a public bond; that annually at the close of each fiscal year, during the incumbency of both in office, Goff and Snodgrass made settlements and that Snodgrass paid the balances found due from him to Goff, and took from him receipts therefor, and more particularly that in September, 1909, at the close of their respective terms of office, and at the end of the fiscal year, 1908-1909, and when both were or should have been required to make final settlements, and close up their business as such public officers, plaintiff by letter took up with both the subject of such settlements and urged upon them the necessity thereof, and its desire to be finally relieved of all obligations on said bond, and all of which resulted on November 30, 1909, in such final settlement and in the giving by Goff to Snodgrass of the receipt, as follows: ''Received of S. I. Snodgrass Ex.deputy Sheriff under me in full for all charges against him as such Deputy as Books Show in our Settlement made August County Court, 1909.'' Signed: H. F. Goff, Ex. S. R. C.

And it is further alleged that this receipt was at once transmitted by Snodgrass to plaintiff as evidence of such final settlement and to satisfy it that no further obligations rested upon it as such surety, and whereby and by other acts and conduct of said Goff it was induced to enter said bond satisfied, and to take no further steps to protect itself against liability thereon, or to collect further premiums from said Snodgrass.

And it appears from the evidence that in September, 1909, Goff wrote plaintiff that during the last days of August, 1909, he had a settlement with Snodgrass for the preceding year and from which it appeared that he owed him a balance of between six and seven hundred dollars, and, as he says in his letter, that the trust company as surety might know ''just how matters showed on his bond.'' And the record shows that upon receipt of this letter plaintiff wrote Goff saying: ''Please let us know whether you consider that there is any real shortage in this matter and whether or not Mr. Snodgrass has in his hands good and collectible tax tickets sufficient to cover the amount due from him;'' and that to this

letter Goff replied the following day saying in substance that Snodgrass had informed him the day before their settlement that he had invoiced or listed his tax tickets and had about six hundred dollars in tickets which he considered good, and which he thought he could collect within two months, that he had a big crop to take care of or would have had them collected a little closer, and that he had twenty-five head of cattle, two horses, lived on the county farm, was overseer of the poor, and Goff added, by way of post script, that he had always found Snodgrass honorable, and suggested to plaintiff that it might ask him to collect up his taxes and turn the same over to him.

It also appears from the evidence that a day or two later, on September 13, 1909, plaintiff wrote Goff in reply to his letter asking for explanation of the word "endorsed", used in his previous letter, in reference to the tax tickets still held by Snodgrass, and to which Goff replied that he meant "Listed or added them up." It is also shown that on September 8, 1909, acting on the suggestion of Goff in his letter of September 4th, plaintiff wrote Snodgrass, inquiring if a settlement of his accounts as deputy sheriff had been made with Goff, and notifying him that the time had come when he should make a final settlement with him, and that as surety on his bond it would like to be advised as to just what the situation was, and saying that the premium of sixty dollars on his bond was charged to him on August 31, 1909, but that when he should make final settlement with Goff and terminate liability on his bond, which could be done either by Goff's surrender of the bond to it, or by giving a receipt in full, and that a ratable proportion of the premium charged would then be canceled, and he would be required to pay only the part actually earned by the company, and that plaintiff took it for granted that a final settlement would then be made, if it had not already been made. Later, on September 13, 1909, plaintiff addressed a letter to Snodgrass enclosing him a bill for the premium on his bond, and making the same suggestion as to premium, after settlement, and also that he could furnish the evidence of the ending of its liability by having Goff surrender the bond or having him

give a receipt in full, and urging him to please give the matter his attention.

Following this correspondence Snodgrass in November, 1909, wrote plaintiff saying "Find enclosed receipt from H. F. Goff showing I have settled in full as Dept. S. R. C.". This receipt together with all the other acts and conduct of defendant Goff constitute the grounds of equitable estoppel pleaded and relied on in the bill.

The bill alleges, and the fact is established by the proof, that after receiving said receipt, plaintiff rested secure in its knowledge that the accounts between Snodgrass and Goff had been fully and finally settled, and that it had been finally and forever discharged from all liability on said bond, and that after receiving said receipt from Snodgrass it never had any notice or knowledge from Goff or from any one else that the facts were otherwise than as represented in said receipt, until shortly before Goff was sued and judgments obtained against him as already stated; and it is alleged, and we think substantially proved that at the time of said final settlement and receipt Snodgrass was so disposed and circumstanced financially that plaintiff, if it had been advised of any mistake in said settlements, or of any alleged default by him in relation to his office, could and would have fully protected itself from any and all loss as such surety. This is manifest not only from the information given by Goff in his letter of September 9, 1909, but from the other evidence in the case.

In *Poling* v. *Maddox*, 41 W. Va. 779, cited and relied on as controlling this case, it is held, sixth point of the syllabus, that: "If a creditor assure a surety of his debtor that the debtor has paid, and is not in default, and thus induces the surety to take no steps to secure himself, or compel payment by the principal debtor, while solvent, and he becomes insolvent, the surety is discharged." And in the opinion it is said that: "If a creditor tell a surety that the debt for which he is surety is paid, and thus lulls him to sleep, so that he takes no step which otherwise he likely would to save himself, or is in any way thereby actually injured, as an estoppel *in pais*, it relieves the surety, though the statement be merely

a mistake, and is not fraudulent, because the creditor, not the surety, is the author of the loss." For this proposition 1 Brandt on Suretyship, sec. 245, and other authorities, in-, cluding our case of *Bates* v. *Swiger*, 40 W. Va. 420, are cited.

That case like this involved the liability of a surety on the bond for a deputy sheriff. The principle announced in *Bates* v. *Swiger* is that: "Where one by words or conduct intentionally causes another to believe in the existence of a certain state of things, or such words or conduct are of such a nature as he has reason to believe will cause him to so believe, and such other, not knowing to the contrary, acts thereon, the former will be estopped from averring or claiming under a different state of things, then existing and known to him, to the prejudice of the other party."

But it is insisted on behalf of the defendant Goff that the facts in this case are unlike those in the Poling-Maddox Case, and that that case is not decisive of this. The argument is that in that case the representations were made directly by the sheriff to the sureties on the deputy's bond, while in this case they were made in the form of a receipt given to the deputy only, and which might or might not have been communicated to the surety. We think this too narrow a view or construction of the principle announced in that decision, and certainly of its application to the facts in the case at bar. Goff knew from his previous correspondence with plaintiff that it was pursuing Snodgrass with demands for settlement of his accounts, and its release and discharge from all obligation on his bond, and that plaintiff had actually accepted Goff's suggestion as a means to that end, and that its efforts had resulted in such final settlement by Snodgrass with him and the giving by him of the receipt to which reference has been made, and he could not have been ignorant of the fact that Snodgrass would naturally and in due course communicate the result of such settlement and the contents of that receipt to the surety on his bond.

Another argument, based on the form of the receipt, is that it does not purport to be a receipt in full for all indebtedness that might occur upon the bond, but only for all

charges against Snodgrass as such deputy ''as books show on our settlement with the commissioners of court'', and that the plaintiff was guilty of culpable or gross negligence in not going to those books, and to the records of the county, or to the auditor of public accounts, and discovering what Goff in his answer says was the mutual but honest mistake of himself and Snodgrass and said commissioners, before whom said settlements were made, but which escaped him for years afterwards, and which impliedly at least he thought himself under no duty to investigate or discover for his own protection or that of the public corporations concerned. He does not claim, however, that the settlements referred to in said receipt were not in fact intended to be final and complete, nor that the receipt given by him and filed with the trust company was not intended to be a complete receipt for all matters pertaining to the office of his deputy. On the contrary it purports on its face to be such; it only refers to the books as proof of such settlement, and this is evidenced by the fact that both parties acted upon this theory or assumption for more than five years thereafter, and if it had not been for the audit of Goff's accounts made years afterwards the actual facts thereby disclosed would never have been discovered. How can Goff then be heard to complain that plaintiff did not discover the alleged mistakes in his settlements, when they escaped him and his deputy and the commissioners and agents of the county and state for more than five years and which did not appear on the face of the settlements themselves? Had not the surety company the right to rely on him to make correct settlements with his deputy? It was under bond to him, but had no duty to supervise his settlements with his deputy, and it had the right to accept at par his representation directly or indirectly by his receipt that the principal in the bond had wholly discharged the conditions thereof and thereby relieved it of all liability thereon. Moreover, Vandal, the accountant who made the annual settlements between Goff and Snodgrass, and who was familiar with the county records, and had had much experience in making such settlements, swears that so far as he knows the settlements between Goff and Snodgrass

are correct; and his evidence discloses that at the time of such settlements he had both Goff and Snodgrass before him, and that in numerous instances when particular matters were referred to that might have been brought into the accounts, they were not so included, because the parties agreed that they had otherwise been settled between them, and that it was not necessary to dispose of them otherwise. How, then, would it have been possible for the surety, if the duty was imposed on it, to get at the actual facts by a mere inspection of the settlements, or the books pertaining thereto? One of the well recognized principles of estoppel *in pais* is that if, in the transaction itself which is in dispute, a party has, by his negligence, caused another to believe a certain state of facts, and the other relying thereon, has been led to act or refrain from acting, when he otherwise would, and is prejudiced thereby, the party at fault cannot be heard afterwards to show that the state of facts did not exist. *Marshall Field & Co.* v. *Sutherland,* (Iowa) 13 L. R. A. (N. S.) 576, 579.

The proposition, already alluded to, that Snodgrass was insolvent at the date of Goff's receipts and settlements with him, and that the plaintiff could not have been prejudiced by any representations of Goff is strenuously urged against the relief sought by the bill. Goff evidently did not consider Snodgrass insolvent at the date of the letter to plaintiff on September 9, 1909, when he enumerated some of the property and assets held by Snodgrass and commended him for honesty; and we have examined the evidence on the question of solvency and are satisfied that although Snodgrass had debts, he also had property out of which any liability on his bond might then have been made. We think Snodgrass was solvent at the time he made his final settlements in the sense that he had property sufficient to pay all his debts.

Numerous other points were raised and discussed by counsel in briefs filed and in oral argument, but they are either indecisive of or collateral to the main issues now disposed of, and it is unnecessary to further consider them for the purposes of this suit.

Our opinion is to reverse the decree and to enter such decree here as we think the circuit court should have entered,

perpetually enjoining the defendant Goff from further prosecuting his said action at law against plaintiff as surety on said bond, and discharging it from all further liability to him thereon.

*Reversed, and decree entered here.*