# Wytheville

SOUTHERN RESIDENCE CORPORATION V. CITY SUPPLY COMPANY, INCORPORATED.

June 15, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Preston P. Taylor* and *Savory E. Amato,* for the appellant.

*Robert R. Beaton* and *J. Sydney Smith, Jr.,* for the appellee.

EPES, J., delivered the opinion of the court.

This is a suit in chancery brought by the City Supply Company, Incorporated, the bill in which names W. H. McCoy, Southern Residence Corporation, J. T. Stafford and G. L. Brickwell as parties defendant. There is, however, no allegation in it showing why Stafford and Brickwell were made parties defendant and no relief is prayed for against them; and we shall treat the bill as a bill against only McCoy and the Southern Residence Corporation.

The material facts shown by the evidence, which are sufficiently alleged in the bill, are as follows:

The Southern Residence Corporation owned in fee simple two lots in the city of Portsmouth, Virginia, on which there were two buildings, designated as 2520-2522 and 2524-2526 Effingham street. On June 22, 1929, it entered into a written contract with W. H. McCoy to rebuild and repair these two buildings and to furnish all material for such work. The material provisions of this contract read as follows:

"The party of the first part agrees to fully complete the said building in all particulars to the satisfaction of the party of the second part and the party of the second part agrees to pay to the party of the first part the said sum of

$2,550 upon the completion of said work to its satisfaction less any small amounts it may from time to time at its pleasure advance to the party of the first part on account of labor during the progress of said work.

"Said work is to begin on the first day of July, 1929, and completed within ninety (90) days, work thereupon to be continuous, inclement weather excepted. Should said alterations be not completed within the time specified and should the said W. H. McCoy fail in any three successive days to have mechanics and artisans at work upon said building, the said Southern Residence Corporation may employ such help as is necessary to complete this contract, charging the cost thereof to the said W. H. McCoy."

Between July 31st and October 14, 1929, City Supply Company, Incorporated, sold and delivered to McCoy for this job materials amounting to $325.92.

On October 14, 1929, McCoy signed and gave to City Supply Company, Incorporated, the following order and assignment dated October 14, 1929, addressed to Southern Residence Corporation:

"Gentlemen:

"Kindly pay to the City Supply Company, Incorporated, of Portsmouth, Virginia, the sum of five hundred and fifty ($550.00) dollars of the amount due me from you for labor and material furnished at 2522 and 2424 Effingham street, Portsmouth, Virginia, and I hereby assign *said due* me from you to the City Supply Company, Incorporated, to the extent of five hundred and fifty ($550.00) dollars."

This order of assignment was mailed to Southern Residence Corporation by City Supply Company, Incorporated, and received by the former on October 16, 1929. It admits that it was received, but the testimony is that it declined to accept it. City Supply Company, Incorporated, furnished other materials to McCoy on this job between October 14th and November 29, 1929, the total price of such material furnished to McCoy July 31-November 29, 1929, amounting to $783.01. All of this material was used by McCoy on this

job and none of it has been paid for by him or any other person.

Prior to the date this assignment was delivered to the Southern Residence Corporation it had made payments to McCoy aggregating $964. During the period November 16th-December 2nd, it paid to McCoy $456.50 by checks drawn to his order for the following amounts, $175, $115, $3.50, $163. The check of December 2nd for $163 was the last payment made by it to McCoy himself. Subsequently it made other payments direct to laborers, mechanics and materialmen for labor and materials furnished by them to McCoy for this job before he discontinued work on it and threw up the job.

McCoy quit the job before it was completed and it was thereafter completed by Southern Residence Corporation at a cost of $529.90. The evidence does not fix exactly the date upon which McCoy discontinued work on this job, but it warrants the inference that it was prior to January 10, 1930; and the commissioner in chancery reports that the rebuilding, repair and improvement of the property was finally completed on or about March 10, 1930.

On January 10, 1930, City Supply Company, Incorporated, filed a mechanic's lien on these buildings for the amount of $783.01 with interest from November 29, 1929, and duly perfected it under the provisions of section 6428 of the Code, notice in writing of the amount and character of its claim being duly served on Southern Residence Corporation on January 18, 1930.

Section 6428, which relates to the perfection of mechanics' liens by *subcontractors,* reads in part as follows: "* * * But the amount for which a subcontractor may perfect a lien under this section shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to the general contractor upon his contract with said general contractor for said structure or building * * *."

So far as the record discloses no other mechanic's lien

was filed on this property, and neither City Supply Company, Incorporated, nor any other subcontractor took steps under Acts 1924, page 658, ch. 435 (Michie's Va. Code, 1930, section 6429a), to fix a personal liability on Southern Residence Corporation.

It is not possible to determine from the record the exact amount of the contract price which remained unpaid on January 10, 1930; but it did not exceed $1,129.50 and was probably materially less. So, on that date the amount due or to become due to McCoy in excess of the $529.90, which Southern Residence Corporation had to expend to complete the job after it was thrown up by McCoy, did not exceed $599.50, and the evidence warrants the inference that it did not exceed $550 on January 18, 1930.

If the Southern Residence Corporation had paid the $550 order of October 14, 1929, there would have been nothing in its hands on January 10, 1930, which was due or thereafter became due to McCoy under its contract with him.

The total amount paid by Southern Residence Corporation to and for the account of McCoy, including the $529.90 paid to complete the job after he threw it up, amounted to $2,280.72; and at the time this suit was brought it had on its hands $269.28 which was due him.

The commissioner in chancery, to whom the cause was referred, reported that the order of October 14, 1929, was an equitable assignment *pro tanto* of the money then due or to become due to McCoy under the contract of June 22, 1929; that upon receipt of notice of the assignment, it became the duty of Southern Residence Corporation to make the application directed by it of any sums due or to become due to McCoy; that if it afterwards voluntarily paid to the contractor the part of the fund so assigned, it did so in its own wrong; that the $269.28 then in the hands of Southern Residence Corporation, "together with the amount wrongfully paid to the contractor, constituted a fund from which plaintiff should be paid the sum ($550) specified in the order and assignment"; that the order should have been

paid on or about January 6, 1930; and that City Supply Company "is entitled to recover from Southern Residence Corporation the sum of $550 with interest from January 6, 1930, until paid, and by virtue of the mechanic's lien it has a lien against the said property for that sum."

The three exceptions filed by the Southern Residence Corporation to this report impinge upon the rule requiring such exceptions to be set out clearly and with certainty (see in this connection *Orr* v. *Pennington,* 93 Va. 268, 24 S. E. 928; *First National Bank* v. *Trigg,* 106 Va. 327, 341, 56 S. E. 158; *Wallinger* v. *Kelly,* 136 Va. 547, 117 S. E. 850; *Guntner* v. *Hughes,* 143 Va. 36, 129 S. E. 239); but from them it can be gathered that the contention of Southern Residence Corporation was that stated in its petition for an appeal, which is this:

"The agreement between McCoy and Southern Residence Corporation provided that the contract price of $2,550 was to be paid to McCoy upon the *completion of the work to the satisfaction of Southern Residence Corporation, less any small amounts that the latter might, from time to time, at its pleasure, advance to McCoy on account of labor during the progress of the work.* The assignment vested no greater rights in City Supply Company than McCoy had, and, therefore, the former could demand nothing from Southern Residence Corporation which McCoy could not demand and certainly McCoy could demand nothing until the work was actually completed to the satisfaction of Southern Residence Corporation." The advances were made to McCoy in accordance with an express provision of the contract and were actually used in the completion of the buildings. "When the work was actually completed to the satisfaction of Southern Residence Corporation only $269.28 remained and actually became due to McCoy. This amount was all that McCoy was entitled to and all that City Supply Company can claim, inasmuch as it stands in the shoes of its assignor."

City Supply Company, Incorporated, made two exceptions to the commissioner's report. The first was that the com-

missioner erred in not reporting that the Southern Residence Corporation was personally liable to City Supply Company, Incorporated, for the whole amount claimed by it ($783.01), by reason of a promise made by Southern Residence Corporation to pay it for building materials which it should furnish McCoy for this job. This exception the court expressly overruled. The second exception was that the commissioner erred in not reporting that Southern Residence Corporation was liable to it under the order of October 14, 1929, for $456.50, the amount paid by it directly to McCoy after this assignment was made, and also for the $269.28 "left after all work was completed in the hands of Southern Residence Corporation."

The material parts of the decree appealed from read as follows:

"The court * * * doth sustain * * * the second exception of said City Supply Company, Incorporated, in that, in addition to the said sum of $550 found by the commissioner * * * to be due and owing from Southern Residence Corporation to City Supply Company, Incorporated, there is an additional sum due from Southern Residence Corporation to City Supply Company, Incorporated, of $233.01, making the total amount due from Southern Residence Corporation to City Supply Company, Incorporated, of $783.01, which was paid directly to W. H. McCoy, or by his direction for his benefit, by Southern Residence Corporation, after Southern Residence Corporation had received notice of the said order and assignment; and it is * * * adjudged, ordered and decreed that Southern Residence Corporation pay to City Supply Company, Incorporated, the sum of $783.01, with interest from January 6, 1930, until paid, and that by virtue of the mechanic's lien filed and perfected herein, City Supply Company, Incorporated, has a lien for the aforesaid sum of $783.01, with interest thereon from January 6, 1930, against the following property, to-wit: * * *."

The assignments of error are (1) that the court erred in not sustaining the exceptions of Southern Residence Cor-

poration to the commissioner's report; and (2) that it erred in sustaining the second exception of City Supply Company, Incorporated, to it.

The first assignment of error is not well taken. The order of October 14, 1929, was an equitable assignment *pro tanto* of any sums then due or that might thereafter become due to McCoy under his contract with Southern Residence Corporation. The terms of the contract between it and McCoy did not give it the right, after receiving notice of the assignment, to make payments to McCoy in disregard thereof, even though such payments were used by him to pay for labor and material which had been used in performing his contract. *Watson* v. *Brunner,* 128 Va. 600, 105 S. E. 97; *Switzer* v. *Noffsinger,* 82 Va. 518; *Rinehart & Dennis Co.* v. *McArthur,* 123 Va. 556, 96 S. E. 829; *Mack Mfg. Co.* v. *Smoot,* 102 Va. 724, 47 S. E. 859. Neither the fact that in the instant case Southern Residence Corporation was empowered under its contract with McCoy to withhold the payments of all of the contract price until after McCoy had completed the work, nor the fact that the contract contemplated that it might, at its pleasure, from time to time make advancement of "small amounts" to McCoy, takes this case out of the rule laid down in *Watson* v. *Brunner, supra.*

The second assignment of error is well made. The order and assignment of October 14, 1929, imposed no duty upon Southern Residence Corporation to withhold from McCoy and pay to City Supply Company, Incorporated, any sum in excess of $550. It neither operated to fix a personal liability upon Southern Residence Corporation to pay for all materials for this job which McCoy might purchase from City Supply Company, Incorporated, nor to fix a lien on the property for the amount of the assignment. The assignment was not good as against any sums which Southern Residence Corporation might have to pay to complete the building in case McCoy threw up the job before its completion. But as there became due, and was paid to McCoy more than $550 after the Southern Residence Corporation

received notice of this assignment, it is personally liable to City Supply Company, Incorporated, for that amount under and by virtue of the assignment.

Section 6428 limited the amount of the mechanic's lien filed by City Supply Company, Incorporated, to the amount which Southern Residence Corporation was indebted to McCoy at the time notice of the lien was served on Southern Residence Corporation, *i. e.*, on January 18, 1930. Section 6432 expressly provides that in the event the owner is compelled to complete the building in consequence of the failure of the general contractor to do so, the amount expended by the owner for such completion shall have priority over all mechanics' liens which have been or may be placed on such building by the general contractor or any subcontractor. See, also, *Schrieber* v. *Bank,* 99 Va. 257, 38 S. E. 134; *Thomas & Co.* v. *McCauley,* 143 Va. 451, 130 S. E. 396.

On January 18, 1930, the total unpaid balance of the contract price which had not been paid to or for McCoy did not exceed the amount of the order of October 14, 1929 ($550), plus the sum ($529.90) which Southern Residence Corporation had paid, or thereafter paid, for the completion of the work after McCoy had refused or failed to complete it. It appears from the evidence to be not improbable that on January 18, 1930, the amount of the contract price unpaid exceeded $529.90 by less than $550; but the evidence is not sufficient to warrant our finding that the implied finding of the commissioner that it did exceed that amount by $550 was erroneous. This $550 included the amount of $269.28 which remained in the hands of Southern Residence Corporation at the time this suit was brought. The only reason that there was anything in the hands of Southern Residence Corporation subject to this mechanics' lien is that it had not paid the order of October 14, 1929; and the court erred in holding that the Southern Residence Corporation, or its property, was liable to City Supply Company, Incorporated, for more than $550 with interest from January 6, 1930.

The portion of the decree above quoted will be modified to adjudge, order and decree that the Southern Residence Corporation is personally liable to City Supply Company, Incorporated, for the sum of $550 with interest from January 6, 1930, and by virtue of its mechanic's lien has a lien on the property in the bill mentioned for that amount. As so modified the decree will be affirmed.

*Modified and affirmed.*

HOLT and HUDGINS, JJ., dissenting in part.