## Richmond

### LAWRENCE P. LATAIF

### v.

### COMMERCIAL INDUSTRIAL CONSTRUCTION, INC., DOUGLAS COBB AND LAURENCE O. MYERS

January 22, 1982.

Records Nos. 790802 & 791340.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*Peter L. Sissman* for appellant.

*M. Patton Echols, Jr. (Joseph B. Hyman,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

Lawrence P. Lataif, plaintiff in an action on an assignment of contract rights, appeals from judgments for defendants Commercial Industrial Construction, Inc. (CICI), and Douglas Cobb. The trial court sustained the defendants' motions to strike, and we summarize the evidence in the light most favorable to the plaintiff.

Laurence O. Myers owed Lataif, an attorney, $3500 for legal services rendered. Douglas Cobb, president and managing officer of CICI, had engaged Myers, a housepainter, to do some work at a construction site, and Myers had not been paid. At Lataif's suggestion, Myers agreed to assign his contract rights to Lataif in satisfaction of the legal fee. Myers was uncertain whether his debtor was Cobb or Cobb's corporation, so Lataif drafted the assignment identifying "Commercial Industries, Inc. and/or Doug Cobb" as obligors. Commercial Industries, Inc. (CII), the name supplied by Myers, was a misnomer and the name of a corporation with which Cobb was unassociated.

Myers executed the assignment on June 18, 1976. To protect Myers' business relationship with Cobb, Lataif agreed not to notify Cobb immediately. Myers was unable to raise the money he owed Lataif from other sources, and Lataif telephoned Cobb on July 12, 1976. Lataif testified that he told Cobb that the assignment was directed "to him personally and/or Commercial Industries, Inc." and that Cobb said "that was fine and that he would be willing to disperse [sic] the money to me." Later the same day, Lataif sent Cobb a copy of the assignment by certified mail. On August 5, Lataif telephoned Cobb again. "I suggested," Lataif testified, "that he make my check payable to me directly and solely and note on the bottom of it that it was for Larry Myers. He indicated that this was a good idea and would do it." By letter dated September 7, Lataif reminded Cobb of his promise and advised him that "I have held off taking any other action to collect this fee because of your kind agreement to disburse the funds in accordance with the assignment." Cobb returned this letter to Lataif with a handwritten note subscribed: "Larry Myers indi-

cated the account had been settled, and we paid him, in full, on 13 August, 1976."

In his conversations with Lataif, Cobb raised no question about the accuracy of the corporate name used in the assignment, and, so far as the record reveals, the misnomer was not discovered until suit was instituted.

Myers filed a petition in bankruptcy in December 1976, and Lataif sued on the assignment. CICI moved to strike on the ground it was not one of the obligors named in the assignment. The trial court sustained the motion, and trial proceeded against Cobb alone. Cobb took the position that Myers and CICI were the only parties to the painting contract; that he, Cobb, was not personally indebted to Myers; and, hence, that he was not bound by the assignment to pay Lataif. Lataif countered that Cobb was estopped to deny personal liability by his assurances that the assignment would be honored.

The trial court found evidence of representations by Cobb and reliance by Lataif. However, the court found further that Lataif had not changed his position because of Cobb's representations but rather had merely "pursued the strategy that he adopted at the outset." Accordingly, the trial court rejected Lataif's estoppel theory, sustained Cobb's motion to strike, and entered final judgment for both defendants.

On appeal, Lataif questions the court's rulings on misnomer and estoppel. Preliminarily, we examine the relevant portions of the law of assignments.

██ "The assignee . . . of any . . . chose in action, not negotiable may maintain thereon in his own name any action which the original obligee . . . might have brought . . . ." Code § 8.01-13. *See* Restatement (Second) of Contracts § 317(1) (1979) ("assignor's right to performance is extinguished . . . and the assignee acquires a right to such performance.") The assignee's right to performance is not conditioned upon a promise by the obligor to honor the assignment. Once the obligor receives notice of the assignment, its obligation runs to the assignee, and the obligor pays the obligee at his own risk. *Southern Res. Corp.* v. *City Sup. Co.,* 160 Va. 660, 169 S.E. 579 (1933); *cf. Evans* v. *Joyner,* 195 Va. 85, 77 S.E.2d 420 (1953) (obligor may, before notice, pay obligee with impunity).

██ In construing an assignment, courts look to substance rather than to form, and an assignment may be actionable if it

shows a clear intent to transfer an identified *chose in action.* *Tatum* v. *Ballard,* 94 Va. 370, 376, 26 S.E. 871, 873 (1897); *Switzer and als.* v. *Noffsinger and als.,* 82 Va. 518, 521 (1886). *See also, Nusbaum and Co.* v. *Atlantic Realty,* 206 Va. 673, 681, 146 S.E.2d 205, 210 (1966); *Hawes & Co.* v. *Wm. R. Trigg Co.,* 110 Va. 165, 65 S.E. 538 (1909). And the *chose* may be identified "with the aid of the attendant and surrounding circumstances." *Fidelity Mut. Life Ins. Co.* v. *City Nat. Bank,* 95 F. Supp. 276, 282 (N.D. W. Va. 1950).

 Guided by these principles, we first consider whether the corporate misnomer was fatal to the assignment. Clearly, Myers intended to transfer his rights under the painting contract to Lataif. The question is whether his *chose in action* was sufficiently identified. The defendants maintain that misnomer of the corporate obligor defeats the assignment. But a misnomer in a corporate name does not invalidate a contract when it is clear what corporation the parties intended, and "such a mistake may be . . . shown in evidence, upon the general issue." *Culpeper Agricultural and Manufacturing Society* v. *Digges, &c.,* 27 Va. (6 Rand.) 165, 167 (1828). *See W. Fletcher, Cyclopedia of the Law of Private Corporations,* § 2444 (1979). We believe the same rule applies to an assignment. As the evidence shows, the corporation Myers and Lataif intended was Cobb's corporation. Cobb, who was, or should have been, aware of the misnomer, knew what corporation was intended, for he acknowledged the debt owed Myers with no complaint or correction. Cobb's understanding and his words and deeds were those of his principal, CICI.

This evidence of mutual meeting of the minds of the several parties as to the identity of the corporate obligor is sufficient to establish the identity of the *chose in action.*[1] We hold that the trial court erred in granting CICI's motion to strike.

The trial court ruled that Cobb was not estopped to deny personal liability on the assignment, and we must decide whether that ruling was correct.

 "Elements necessary to establish equitable estoppel, absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment." *T . . .* v. *T . . .,* 216 Va. 867, 873, 224 S.E.2d 148, 152 (1976). The trial judge re-

---

[1] Absent evidence that CICI was misled to its detriment by the misnomer, the fact that the name used in the assignment was the name of an existing corporation is immaterial.

jected Lataif's estoppel argument on the ground that Lataif had failed to prove one of these elements; he found that, although Cobb had made a representation upon which Lataif relied, Cobb's representation had not caused Lataif to change his position.[2]

■ But the evidence, viewed in the light most favorable to Lataif, supports a contrary conclusion. True, Lataif "pursued the strategy that he adopted at the outset", *i.e.*, he persisted in his original decision to seek his remedy under the assignment. That does not mean, however, that he did not change his position within the contemplation of the doctrine of estoppel. A person induced to refrain from taking an action he otherwise would have taken has changed his position in reliance upon the inducement. And when one has lulled another into inaction to his detriment, the latter may invoke estoppel against the former. *City of Bedford* v. *James Leffel & Co.,* 558 F.2d 216 (4th Cir. 1977); *Trust Co.* v. *Goff,* 81 W. Va. 366, 94 S.E. 756 (1917).

The evidence shows that Lataif advised Cobb, well before Myers was paid, that he had "held off taking other action to collect this fee because of your kind agreement to disburse the funds in accordance with the assignment." At trial, Lataif mentioned the possibility of a second assignment, a lawsuit, garnishment, and attachment. On appeal, the defendants suggest that any such action would have been fruitless and that, in such case, estoppel would fail for want of detriment.

It is a fact that Myers filed a petition in bankruptcy in December 1976. But this was some five months after Cobb first assured Lataif that the assignment would be honored, and there is nothing of record to show that Myers was judgment-proof during the time Lataif was relying on Cobb's assurance. Moreover, the trial court's ruling was not based upon want of detriment, and that question is not before us on this appeal.

The inaction into which Lataif said he was lulled by Cobb's representation constituted a change in his position, and we hold that Lataif's evidence made out a *prima facie* case of estoppel

[2] The trial judge also observed that estoppel "is much more likely to be invoked . . . where the party to be estopped has superior knowledge or superior leverage in negotiations." Lataif argues that the court thus added an irrelevant element to the concept of estoppel. It is clear that the trial judge did not rest his ruling upon that observation. While disparity of bargaining power is not an essential element of estoppel, it is a relevant consideration.

against Cobb and that the trial court erred in sustaining his motion to strike.[3]

The judgment will be reversed, Lataif's cause of action restored to the docket, and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[3] The defendants argue that "[w]hat Lataif wants is to hold CICI or Cobb, individually, liable to him for Myers' debt" and that Cobb's oral assurance that the assignment would be honored is unenforceable under the Statute of Frauds because, they say, it was no more than "a promise to answer for the debt . . . of another." Code § 11-2(4). We disagree. As we have said, a promise is not a condition precedent to the duty of an obligor to pay an assignee; the duty arises by operation of the law of assignments. Hence, considering the evidence adduced at trial, we hold that it is immaterial whether Cobb's assurance was written or oral.