925 F.2d 1457
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TYGER CONSTRUCTION COMPANY INCORPORATED, a South Carolina
Corporation, individually, and for the use and
benefit of Tyger-Pensacola Joint
Venture, Plaintiff-Appellee,
v.
PENSACOLA CONSTRUCTION CO., a Delaware Corporation,
Defendant-Appellant.
 No. 89-2433.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1991.
Decided Feb. 22, 1991.
As Amended March 5, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Richard B. Kellam, Senior District Judge. (CA-88-185-NN)
 Richard W. Miller, Miller, Bash and Starrett, P.C., Kansas City, Mo. (Argued), for appellant; Roy Bash, Scott A. Long, Miller, Bash and Starrett, P.C., Kansas City, Mo., on brief.
 Samuel Walter Hixon, III, Williams, Mullen, Christian & Dobbins, Richmond, Va. (Argued), for appellee; William R. Mauck, Jr., Williams, Mullen, Christian & Dobbins, Richmond, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before SPROUSE, CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellee Tyger Construction Company, Inc. ("Tyger") instituted this breach of contract action on December 12, 1988 in the United States District Court for the Eastern District of Virginia against defendant-appellant Pensacola Construction Co. ("Pensacola"). The complaint alleged that Pensacola had breached the joint venture agreement ("the Agreement") between the parties by failing to make a capital contribution to the joint venture as required by the Agreement. The district court granted Tyger's motion for summary judgment, and Pensacola appeals. We affirm.
 
 I.
 
 2
 Tyger and Pensacola, as joint venturers and in accordance with the Agreement, entered into a contract with the Virginia Department of Transportation ("VDOT") to furnish materials and labor for the construction of a portion of a highway and a tunnel. According to the joint venture agreement, Tyger was to have a sixty percent (60%) interest in the joint venture and Pensacola a forty percent (40%) interest. Tyger and Pensacola were to make capital contributions in accordance with their percentage of ownership interest and to share profits on the same percentages. The Agreement provided that working capital was to be furnished immediately by each partner upon request. Each partner made all required capital contributions until July 20, 1987, when Pensacola refused to make a requested contribution of $2,340,000. In order to continue to perform under the contract with the VDOT, Tyger increased its capital contribution to the joint venture to cover the amount requested of and not made by Pensacola. Tyger instituted this breach of contract action claiming that it was entitled to the $2,340,000, which it had advanced on Pensacola's behalf, plus interest on this advance in the amount of $450,000.
 
 
 3
 Pensacola counterclaimed against Tyger asserting that Tyger, prior to bid, made numerous misrepresentations concerning the manner in which the work would be performed and the maximum accounting and bookkeeping costs to be charged to the joint venture during the performance of the project. Pensacola also alleged that, after the contract was awarded, Tyger (1) concealed information regarding the project's progress, (2) improperly attempted to renegotiate with suppliers to lower their pre-bid price quotations, (3) failed to enter into contracts with suppliers and contractors on terms favorable to the joint venture, (4) failed to properly manage the joint venture's resources, and (5) misrepresented the availability of a supplier of sand. Based on these allegations, Pensacola sought recovery for breach of fiduciary duty and misrepresentation. It is not disputed that Tyger made its required contributions of capital and advanced $2,340,000 on behalf of Pensacola.
 
 
 4
 On April 21, 1989, Tyger moved to dismiss Pensacola's counterclaims for breach of fiduciary duty and misrepresentation pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). On May 23, 1989, Tyger moved for summary judgment against Pensacola on its breach of contract action. By opinion and order of June 19, 1989, the district court granted Tyger's motion for summary judgment and awarded Tyger $2,790,000.[1] The sole issue on appeal is whether the district court erred in granting summary judgment in favor of Tyger. After considering the record in this case and the applicable law and hearing oral arguments, we find that the district court correctly granted Tyger's motion for summary judgment.
 
 II.
 
 5
 Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We find that the district court properly concluded no genuine issue of material fact existed in this case and that Tyger was entitled to a judgment as a matter of law.
 
 
 6
 The following material facts were undisputed in the district court:
 
 
 7
 1. Tyger requested of Pensacola the sum of $2,340,000 in July, 1987, and Pensacola has not paid it;
 
 
 8
 2. On five occasions prior to July, 1987, Tyger informally requested capital from Pensacola, and Pensacola contributed in accordance with the request;
 
 
 9
 3. On each of the five occasions prior to July, 1987, the request for capital was made by someone within Tyger's management;
 
 
 10
 4. On none of the five occasions prior to July, 1987, did the request for capital issue from the Managing Partner of the joint venture following the approval of the joint venture's Management Committee as the Agreement specified; and
 
 
 11
 5. On each of the five occasions prior to July, 1987, Pensacola contributed requested capital to the joint venture notwithstanding the fact that the procedure for requesting capital contributions specified in the Agreement was never adhered to.
 
 
 12
 In response to these undisputed facts, Pensacola asserts (1) that Tyger's breach of contract claim is barred as a matter of law until there has been an accounting and (2) that Tyger's claim is barred because Tyger failed to follow the Agreement in requesting capital from Pensacola.
 
 
 13
 First, with regard to Pensacola's contention that Tyger's claim is barred as a matter of law until there has been an accounting, we find that Tyger is not required to await an accounting of the joint venture before pursuing a breach of contract claim against Pensacola, its co-venturer. We follow the well settled rule that, when the dispute between joint venturers is over a breach of the joint venture agreement, a party may maintain an action at law without an accounting. See, e.g., Julian Petroleum Corp. v. Courtney Petroleum Co., 22 F.2d 360 (9th Cir.1927). An accounting on a substantial project such as the VDOT project is a detailed and time consuming proposition. If a joint venturer were forced to seek an accounting as a prerequisite to suing a co-venturer for failure to contribute working capital, the work of the joint venture could come to a halt subjecting the joint venture (and its co-venturers) to liability on a number of fronts. Moreover, if a joint venturer were required to seek an accounting prior to filing its breach of contract suit, a joint venturer, who honors its obligation to contribute working capital, would be seriously disadvantaged when its co-venturer reneged on its contractual obligation to contribute capital. Thus, we find that the district court was correct in ruling that, as a matter of law, Tyger was not required to await an accounting of the joint venture prior to pursuing a breach of contract claim against Pensacola.
 
 
 14
 As to Pensacola's second contention, we find the district court correctly ruled that Pensacola was estopped from asserting that Tyger's failure to follow the Agreement excused Pensacola's failure to pay. Whether estoppel arises in any case is ordinarily a question to be determined by the trier of fact. See Tidewater Equip. Co. v. Reliance Ins. Co., 650 F.2d 503, 506 (4th Cir.1981). However, as the district court properly ruled, whether estoppel arises becomes a question of law when the facts are not in dispute or when only one reasonable inference can be drawn from the facts. See Highlands Ins. Co. v. Allstate Ins. Co., 688 F.2d 398, 404 (5th Cir.1982); In re Metropolitan Int'l, Inc., 616 F.2d 83, 86 (3d Cir.1980). In this case, the facts are not in dispute. Tyger concedes that the procedures set out in the Agreement for capital calls were not followed for the July 20, 1987 capital call or for any of the five previous capital calls. Pensacola admits that it honored the first five calls. The district court was correct in ruling that the question of whether Pensacola's actions raise an estoppel can be determined as a matter of law.
 
 
 15
 It is well established under Virginia law that the elements necessary to establish equitable estoppel, absent a showing of fraud or deceit, are (1) a representation, (2) reliance, (3) a change of position, and (4) prejudice. Lataif v. Commercial Indus. Constr., Inc., 223 Va. 59, 286 S.E.2d 159, 161 (1982). The district court correctly ruled that each of these elements was satisfied by the undisputed facts in this case. First, the district court properly determined that the "representation" took the form of a course of conduct between the parties--Pensacola's honoring of the five previous capital calls without once raising an objection to the procedure followed. Second, the district court found that the "reliance" and "change of position" elements were satisfied by Tyger's conclusion that the formal procedures set out in the Agreement need not be strictly adhered to when it made the July, 1987 capital call. Finally, the district court ruled that Tyger's forced contribution of $2,340,000 to keep the project going and to avoid a breach of the joint venture's contract with the VDOT satisfied the "prejudice" element. After considering the undisputed facts in this case and the applicable law and hearing the oral arguments, we find that the district court correctly ruled that Pensacola was estopped from asserting that Tyger's failure to request capital according to the procedures in the Agreement excused Pensacola's failure to pay.
 
 III.
 
 16
 For the foregoing reasons, we find that the district court properly concluded that no genuine issues of material fact existed and that Tyger was entitled to a judgment as a matter of law. We therefore affirm the district court's grant of Tyger's motion for summary judgment.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 The district court also partially granted Tyger's motion to dismiss Pensacola's counterclaims, dismissing forty-eight (48) of the fifty-one (51) allegations of breach of fiduciary duty and misrepresentation against Tyger. On July 17, 1989, the three allegations remaining in Pensacola's counterclaim were tried before a jury. Pensacola abandoned two of the allegations, leaving only one issue for the jury's consideration. The jury returned a verdict in favor of Pensacola for $5.6 million. Tyger moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. By opinion and order dated October, 20, 1989, the district court granted Tyger's motion for a new trial finding "serious doubt" that Pensacola established by clear and convincing evidence all the elements of fraud and finding it "abundantly clear that the amount of damages awarded was against the clear weight of the evidence presented."
 The retrial of the sole misrepresentation issue took place on February 21, 1990, and resulted in a jury verdict in favor of Pensacola in the amount of $1,578,250. Judgment was entered in favor of Pensacola in accordance with the jury's verdict on March 1, 1990.