**CIRCUIT COURT OF THE CITY OF ROANOKE**

Berglund Chevrolet, Inc.

v.

Thor, Inc.

October 31, 2003

Case No. CL03-517

BY JUDGE WILLIAM D. BROADHURST

The parties are before the Court on Thor's motion to dismiss. Berglund alleges that "Berglund and Thor entered into a contract" and that Thor breached it by installing substandard tile.

Thor claims that the contract relied on by Berglund shows that Berglund Chevrolet, Inc., is not a party to the contract and hence cannot sue under it. Berglund admits that Berglund Chevrolet, Inc., is not mentioned in the contract, but urges that a reference in the contract to "Berglund Automotive Group" is sufficient to allow it to proceed. The parties agree that there has never been a business entity known as "Berglund Automotive Group."

Having reviewed the evidence and considered the authorities submitted by counsel, the Court concludes that Berglund is not a party to the contract as it claims in its motion for judgment. Thor's motion to dismiss is therefore granted, with leave granted to Berglund to replead.

*Factual Background*

The evidence is not in material dispute. The contract at issue is an eleven page preprinted form. The document is designed to facilitate an arrangement between an "Owner," "Architect," and "Contractor." Under the form terms, the obligated parties are the Owner and Contractor, with the Architect acting

as a construction overseer for the Owner. Spaces permit the drafter to fill in the parties, project specifications and conditions, and payment terms.

An employee of an architect from a local firm, who was to act as Architect on this $700,000 project, completed the form contract on his own. (The first page of the form contains the following statement: *"THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION."* This language apparently did not deter the architect or the parties.) He identified the parties on the first page in the "Owner" space as "Mr. Bruce Farrell" followed by a line containing the words "Berglund Automotive Group" and a post office address. The "Contractor" was identified as "Thor, Inc." Among the multiple preprinted terms in the succeeding pages, he provided a description of the project which called for the Contractor to perform construction work for the Owner at three locations, the "Truck Showroom," "Chevrolet Showroom," and "Ford Showroom." He did not add any information to the signature page at the end of the form. This page has separate preprinted signature lines for the Owner and for the Contractor and, beneath each, a line for "Printed name and title."

The contract was executed at a meeting attended by the architect, Mr. James B. Bradshaw, President of Thor, and Mr. Bruce Farrell. Mr. Farrell is an officer or principal in several companies, including Berglund Chevrolet, Inc., Farrell Properties, L.L.C., and Berglund Ford, Inc. Mr. Farrell and Mr. Bradshaw had worked with each other on other construction projects. Both of these men are successful, experienced businessmen, who are familiar with the difference in signing in an individual capacity and in a corporate capacity.

Mr. Farrell executed the contract as "Owner." He signed "Bruce M. Farrell" with no corporate references. He did not fill in the line that called for him to print a "name and title." Mr. Bradshaw executed the contract as "Contractor." He signed on the Contractor line "Thor, Inc., by James B. Bradshaw, President," and on the line provided printed his name followed by the word "President."

The evidence revealed that "Berglund Automotive Group" does not exist as a business entity or a trade name and was unknown to Mr. Farrell. Mr. Farrell does not own the "Chevrolet Showroom," the "Truck Showroom," or the "Ford Showroom." These properties are owned or operated by Mr. Farrell's corporations. Berglund Chevrolet, Inc., owns the Chevrolet and Truck Showrooms. Farrell Properties, L.L.C., owns the land and building housing the Ford Showroom and leases the site to Berglund Ford, Inc. At no time prior to the execution of this contract or during its performance did Mr. Farrell articulate who owned the properties or indicate that any of his

corporations were or should have been parties to the contract. There is no hint of any sort of intentional misrepresentation or bad faith in the dealings between Mr. Farrell and Mr. Bradshaw.

Work commenced soon after the contract was signed. During the performance of the contract, Mr. Farrell endorsed change orders in his own name with no corporate reference. Thor obtained an insurance policy securing Berglund Automotive Group. Thor also sought progress payments through periodic invoices sent to "Berglund Automotive Group" at the post office address designated in the contract. Berglund Chevrolet, Inc., paid for the work invoiced on the Truck Showroom and the Chevrolet Showroom by checks drawn on an account in the name of Berglund Chevrolet. Berglund Ford, Inc., paid the invoices for work done at the Ford Showroom on an account drawn in the name of Berglund Ford. No one at Thor took any notice in processing these checks that they were not drawn on an account of "Berglund Automotive Group."

Mr. Bradshaw testified that he intended to contract on behalf of Thor with Mr. Farrell as an individual. It was important to Bradshaw to contract with the property owner to spare Thor any mechanics lien difficulties. As it was presented to him, he assumed that Farrell, as "Owner," actually owned the properties involved. Bradshaw admitted that he noted the reference to "Berglund Automotive Group" but did not attach any corporate significance to it since he did not expect any problems based on his experience with Farrell.

Mr. Farrell testified simply that he intended for Berglund Chevrolet, Inc., to be the contracting party for work done at that property.

### Discussion

The imperfect recitation of a corporate name in a contract does not prevent the actual corporate party from maintaining an action for breach "when it is clear what corporation the parties intended." *Lataife v. Commercial Industrial Constr., Inc.*, 223 Va. 59, 63, 286 S.E.2d 159, 161, (1982). The fact that the contract refers to a nonexistent entity creates a latent ambiguity in the contract that permits the Court to examine parol evidence to determine what the parties intended. *See Southern Ins. Co. v. Williams*, 263 Va. 565, 570, 561 S.E.2d 730, 733 (2002). In so doing, the Court may properly look to the language employed, the circumstances surrounding the parties at the time of execution, and the object of the agreement. *Kelln v. Kelln*, 30 Va. App. 113, 125, 515 S.E.2d 789, 795 (1999).

The wording and manner of execution of the contract do not support the inference that Mr. Farrell intended to make Berglund Chevrolet, Inc., a party

to this contract. Mr. Farrell knew the difference between signing on behalf of a corporation and signing in his own right. Yet he did not object to the language describing "Owner" using his individual name accompanied by no corporate reference or connecting language to the next line "Berglund Automotive Group." He knew that there was no corporation known as "Berglund Automotive Group." There is no typical corporate designation such as "Inc.," "Co.," or the like included in the title that might lead him to reasonably conclude that this imperfectly referred to one of his corporations. This is in stark contrast to the next section that describes the Contractor as "Thor, Inc.," with the obvious corporate designation.

This contrast is repeated on the signature page. The "Contractor" line reflects Mr. Bradshaw's cursive signature and his corporate title. This is followed immediately on the line for "Printed name and title" by Mr. Bradshaw's printed name and title. In contrast to this clear corporate reference, the "Owner" line contains only the cursive signature of Mr. Farrell, with no suggestion of corporate authority. Mr. Farrell did not print anything on the next line when the text invited him to offer a corporate title. Thus the printed terms and signatures by which the parties identify themselves clearly raise the distinction between the individual and corporate character of the parties to the contract.

This distinction is not insignificant to Thor. Mr. Bradshaw wanted to avoid entangling Thor in potential mechanic's lien litigation. This concern rationally supports his intent to be in a contract with the actual owner of the property. From all that was apparent from both the wording and execution of the contract, the owner was Mr. Farrell as an individual. The term "Owner" naturally implies that the one so described actually owns the property. That title is identified with "Mr. Bruce Farrell," which is clearly the name of an individual. The words "Berglund Automotive Group" without more followed by a post office box address do not suggest that the Mr. Farrell is a corporate officer or agent. It is as easily interpreted as a business address for Mr. Farrell. Even assuming, as Mr. Bradshaw did, that the words referred to some company that Mr. Farrell was associated with, the phrase does not compel the inference that a reasonable person should have thought that he was entering a contract with one of Mr. Farrell's corporations. Particularly in view of the manner in which Mr. Farrell signed the contract, the language supports Mr. Bradshaw's testimony that he thought that he was in a contract with Mr. Farrell, the individual.

Berglund urges that the conduct of the parties refutes this intent. The parties' conduct during the performance of the contract certainly suggests some blurring of the entities involved. Thor titled its invoices "Berglund

Automotive Group," it unknowingly received payment from what turned out to be Farrell companies, and it obtained a policy for the benefit of Berglund Automotive. However, during this same period of time, Mr. Farrell was still endorsing change orders in his own name with no other corporate references. Considering the equivocal behavior of the parties, the Court cannot say that Thor's conduct demands the conclusion that Thor actually intended to contract with one of Mr. Farrell's corporations. Where conduct is used to show the intent of the parties, the acts relied on must clearly demonstrate the intent and not be of doubtful or arguable quality. 4A M.J., *Contracts*, § 47.

Mr. Farrell's testimony that he intended Berglund Chevrolet, Inc., to be in contract with Thor for the work done at its properties finds little support in the other evidence. While this intent may have in fact existed, it was shrouded by the manner of his execution of the contract and in his execution of the change orders in his individual name. A party will be held to the intent that it actually expresses, and not one that it keeps hidden. *Wells v. Weston*, 229 Va. 72, 78, 326 S.E.2d 672, 676 (1985).

The Court finds that Berglund has not demonstrated that the parties "clearly intended" Berglund Chevrolet, Inc., to be a party to this contract. *See Lataife v. Commercial Industrial Const., Inc.*, 223 Va. 59, 286 S.E.2d 159 (1982). A corporation may not maintain an action on a contract when the contract names individuals as parties, even where the individual is identified as a corporate officer. *Cottrell v. General Systems Software Corp.*, 248 Va. 401, 448 S.E.2d 421 (1994). The general rule at common law is that an action on a contract must be brought in the name of the promisee or promisor. *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Ass'n.*, 219 Va. 1001, 1003, 254 S.E.2d 61, 62 (1979). Berglund Chevrolet, Inc., is not a party to this contract. Since that is the basis for the plaintiff's claim, it cannot maintain this action for its breach.

For the reasons stated, Thor's "special plea" and motion to dismiss are granted. Berglund is granted leave to refile its motion for judgment by a pleading filed no later than November 28, 2003.