# Richmond

## JOHN T. WILSON COMPANY, INC. v. M. McMANUS, TRADING, ETC., AND SISTERS OF CHARITY OF ST. JOSEPH'S ACADEMY AND ORPHAN ASYLUM OF RICHMOND, VIRGINIA.

March 22, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*J. H. Rives, Jr.,* for the appellant.

*Sinnott & May* and *Wilbur H. Ryland,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

The only question presented in this record is whether a party, who sold material used in a building to a subcontractor, is entitled to a mechanic's lien when the general contractor, at the time the notice was served upon him, had fully discharged his obligation to the subcontractor.

The facts are not in dispute. It is admitted that John T. Wilson Company, Inc., agreed to construct certain buildings for the Sisters of St. Joseph's Academy and Orphan Asylum of Richmond, Virginia. As general contractor, the John T. Wilson Company sublet the stone work to John B. Helfert and Company, Inc., who in turn purchased materials from M. McManus, trading as Richmond, Virginia, Granite Quarries. Before completing its contract, John B. Helfert and Company became financially involved and unable to fulfill its contract with the

general contractor, who was compelled to complete the stone work. In so doing, the general contractor expended sums in excess of the total consideration named in the contract with the subcontractor. McManus, upon the failure of the subcontractor, gave notice to the owner and the general contractor that he had filed in the clerk's office memoranda for a mechanic's lien. At the time these notices were served the owner was indebted to the general contractor, but the general contractor was not then, nor did he subsequently become, indebted to the subcontractor. The owner in its settlement with the general contractor withheld a sum sufficient to pay the debt owing to McManus; hence the owner is not interested in this controversy, which is between the general contractor and the party who furnished the subcontractor material used in the building.

There is no privity of contract between John T. Wilson Company and McManus. Their rights are fixed by the statute. Code, section 6429 reads:

"Any person performing labor or furnishing materials for a subcontractor, in order to perfect the lien given him by section sixty-four hundred and twenty-six, shall comply with the provisions of section sixty-four hundred and twenty-seven, and in addition thereto give notice in writing to the owner of the property, or his agent, and to the general contractor, or his agent, of the amount and character of his claim. *But the amount for which a lien may be perfected by such person shall not exceed the amount for which said subcontractor could himself claim a lien under the preceding section.*" (Italics supplied.)

McManus contends, and the chancellor below held, that the italicized words in the above section mean that the amount due or to become due to the general contractor under his contract with the owner at the time the notice is served fixes the amount for which a party furnishing material to a subcontractor for use in the structure may obtain a lien.

The general contractor contends that such party is en-

titled to no lien unless at the time notice is served the general contractor is indebted, or thereafter becomes indebted, under the contract to the subcontractor.

Comparing the language used in the present statute with section 2477 of the Code of 1887, and subsequent amendments thereto, the legislative intent becomes reasonably clear. In 1887 the section did not in express terms include laborers, mechanics or those furnishing material used in the building, but simply prescribed the procedure a subcontractor was required to follow in order to perfect his lien, and concluded with this language: "But the amount for which a lien may be perfected by such person shall not exceed the amount in which the owner is indebted to the general contractor at the time notice is given."

By the act of 1893-4 the section was amended (chapter 476) to include in specific terms laborers, mechanics and those furnishing material used in a structure; prescribed the same procedure and fixed a limit to the amount of such lien, in these words: "But the amount for which a lien may be perfected under this section shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given or shall thereafter become indebted to said general contractor upon his contract with said general contractor for said structure or building."

The contract between the owner and the general contractor and the subsequent payments thereunder fix the amount for which the general contractor may claim a lien on the building. The above act fixed the same limit to the amount for which any other person may claim a lien. Notwithstanding the fact that the subcontractor might have contracted for the work and the material furnished, no notice of intent to claim a lien was required to be given the general contractor by those under contractual relations with the subcontractor.

Two material changes were made in this statute by the Acts of 1895-6, p. 903 (chapter 827), and the Acts of 1897-8,

p. 488 (chapter 451), which are included in section 2477 of Pollard's Code of 1904. (1) The statute, for the first time, made a distinction between the amount of a lien to which a subcontractor was entitled and the amount of a lien to which laborers and those furnishing material to the subcontractor were entitled. (2) All parties who were under contractual relations with the subcontractor to perform work or furnish material used in the structure were required to give notice to the general contractor of the amount and character of their claims before becoming entitled to a lien on the building or structure. In other words, two distinct classes of liens were recognized. The provisions fixing the limit of the amount of the liens to which each class was entitled were stated thus:

"But the amount for which a lien (of subcontractors) may be perfected under this section shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to said general contractor upon his contract with said general contractor for said structure or building or railroad. And when the labor shall have been performed or work done or material furnished for one who is himself a subcontractor, then the person claiming the lien shall also give a like notice to the general contractor; provided, that the amount for which a lien may be perfected by such person shall not exceed the amount for which said subcontractor could himself claim a lien under this section."

The revisors of the 1919 Code made no material change in the language fixing the limit of the amount of the lien of a subcontractor or those furnishing material and labor upon his order, but they recognized the two classes of liens and incorporated the appropriate provisions for each in separate sections. See Code, sections 6428-6429.

The material amendments to section 2477 of the Code of 1887 and the difference in the language used clearly reveal a legislative intent to change the limit of the amount to which parties performing work or furnishing

material to a subcontractor were entitled. It seems equally clear that the legislature has placed those who under agreement with a subcontractor perform work or furnish material used in the building on the same basis with such subcontractor. Before a subcontractor is entitled to claim a lien on a building he, under his contract with the general contractor, must have performed some work or furnished some material for which the general contractor is under contractual obligation to pay. The maximum amount for which he is entitled to. claim a lien is governed by the condition of accounts between the owner and the general contractor at the time notice is given. If the general contractor is not indebted to the subcontractor, the subcontractor is not entitled to a lien. In fixing the amount of the lien to which persons performing labor or furnishing material to a subcontractor are entitled, the legislature has declared that such lien "shall not exceed the amount for which said subcontractor could himself claim a lien." The language is plain, unambiguous, and its meaning reasonably clear.

In the case under consideration the general contractor is not in. default, he has fully discharged his obligation under his contract to the subcontractor. McManus, under the statute, in the absence of fraud or collusion, is no more entitled to a mechanic's lien than the subcontractor to whom he extended credit.

For the reasons stated, the decree of which complaint is made is reversed and a final order will be entered for appellant.

*Reversed.*