## Richmond

RICHARD A. WATERVAL, KAREN E. WATERVAL, AND RICHARD A.
WATERVAL, TRUSTEE FOR KURT REINHOLD WATERVAL v.
WILLIAM DOOLAN ELEVATOR SERVICE, INC., AND
WASHINGTON PLATE GLASS CO., INC.

June 14, 1971.

Record No. 7500.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

R. J. *Lillard* (*McCandlish, Lillard & Marsh*, on brief), for appellants.

Harry P. *Friedlander* (*Mark P. Friedlander; Mark P. Friedlander, Jr.; Blaine P. Friedlander, Jr.; Marshall H. Brooks; Friedlander, Friedlander & Brooks*, on brief), for appellees.

HARMAN, J., delivered the opinion of the court.

The issue here is whether two subcontractors, William Doolan Elevator Service, Inc., (Doolan) and Washington Plate Glass Co., Inc., (Glass), are entitled to a mechanic's lien on an office building in the Bailey's Crossroads area of Fairfax County.

Richard A. Waterval (Waterval) owned a lot in the Lake Barcroft area of Fairfax County, Virginia, upon which he planned to build a residence.

Richard A. Waterval, Karen E. Waterval and Richard A. Waterval, Trustee for Kurt Reinhold Waterval, (Waterval Associates) owned a parcel of land in the Bailey's Crossroads area of Fairfax County upon which they planned to build an office building.

Brown and Johnson, Inc. (B. & J.), a general contractor, learned of the plans of Waterval and Waterval Associates and solicited this work.

Waterval advised B. & J. that Waterval Associates had encountered difficulty in arranging financing for the office building and that financing had not yet been obtained. B. & J. offered to assist Waterval obtain financing for the office building through B. & J.'s contacts in the financial community.

Ensuing negotiation resulted in an agreement between B. & J., Waterval Associates and Waterval. This agreement was evidenced by three documents, a contract and letter dated September 25, 1963, and a contract dated October 11, 1963. These documents, read together, established a combined contract price of $265,000 for construction of the dwelling and office building. Construction of the dwelling was to begin forthwith and construction of the office building was contingent upon satisfactory financing being arranged prior to its commencement. In the event both structures were erected by B. & J., the sum of $245,000 was allocated as the cost of the office building and $20,000 was allocated as the cost of the residence. If satisfactory financing could not be arranged for the office building and only the residence was constructed by B. & J., then Waterval agreed to pay $35,000 to B. & J. for construction of the residence.

Work on the residence was substantially completed prior to May 1, 1964.

Waterval Associates obtained their loan commitment on the office building in February and construction was started in April, 1964. From time to time partial payments were made to B. & J. as construction progressed.

In the fall of 1964 Waterval learned that B. & J. was delinquent in paying its bills in connection with the construction of the office building. The architect employed by Waterval Associates surveyed the project and determined that the remaining undisbursed funds would be insufficient to assure completion of the building. Waterval Associates and the architect refused to make further partial payments on the contract price.

In the meantime a controversy had arisen between Waterval and B. & J. in connection with completion of work at the residence.

In October, 1964, a meeting was arranged in an attempt to work out a solution to the problems between B. & J., Waterval and Waterval Associates. This meeting was attended by Waterval, who repre-

sented himself and Waterval Associates, B. & J.'s representatives, the architect and representatives of the sureties on the completion bond given by B. & J. This meeting resulted in a written agreement dated October 15, 1964, executed by all of those present. Under this agreement Waterval accepted the house in its then state of completion with B. & J. agreeing to pay certain outstanding bills for labor and material. Waterval Associates agreed to increase the contract price on the office building from $245,000 to $270,000 and the sureties agreed to contribute $25,000 toward the cost of completion of the office building. The undisbursed balance of $120,053 on the original contract price of $245,000 and the $50,000 resulting from the $25,000 increase in the contract price and the $25,000 contributed by the sureties would be placed in an escrow account administered by the architect and a representative of B. & J. and the sureties. These funds were to be used to complete the office building and were disbursed for that purpose.

Work proceeded under the October, 1964, agreement until all funds available thereunder were exhausted. Waterval Associates, in an effort to complete the office building, arranged and paid for other work necessary to complete the building.

On May 7, 1965, when notified of the liens of Doolan and Glass, Waterval had paid the contract price for his residence and Waterval Associates had paid $124,947 to B. & J., $145,053 to the escrow fund and $19,885 had been expended by them on the office building after the escrow fund was exhausted, a total of $289,885.

The evidence disclosed and the trial court found that B. & J. had expended $49,000 in constructing Waterval's residence which B. & J. contracted to build for $20,000. The trial court deducted $29,000, which it found was "diverted to the residence," from payments in the amount of $289,885 made by Waterval Associates on the office building and arrived at a net credit of $260,885 against the contract price of $270,000. From this computation the court held that Waterval Associates were liable for $9,115 when the liens of Doolan and Glass were perfected on May 7. In so holding we find that the trial court erred.

Code § 43-7 provides the amount for which a subcontractor may perfect a lien "shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to the general contractor upon his contract . . . ."

The undisputed evidence establishes that on May 7, when notice was given, Waterval Associates were not indebted to B. & J. for any part of the contract price of the office building and had, in fact, made payments of $19,885 in excess of the contract price.

Since there is no basis in the evidence for concluding that Waterval Associates were indebted to B. & J. when the lien was perfected, Doolan and Glass, as subcontractors, cannot assert a mechanic's lien. Code § 43-7, *Atlantic States Const. Co.* v. *McCann Steel Co.*, 210 Va. 473, 171 S.E.2d 689 (1970); *Wilson Co.* v. *McManus*, 162 Va. 130, 173 S.E. 361 (1934).

Our order will reverse the decree appealed from and this suit will be remanded for entry of a decree dismissing the bill of complaint filed by Doolan and Glass.

*Reversed and remanded.*