873 F.2d 1437
 13 Fed.R.Serv.3d 673
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ALLIANCE DEVELOPMENT CORPORATION, Plaintiff-Appellant,
v.
McDEVITT & STREET COMPANY, INC.; Kevin Pyle; Walter
Zaremba; Zaremba Tysons Corner Co., general
partners trading under the name "Tysons
Corner Associates", Defendants-Appellees,
and
Earthmovers, Inc.; Pan American Financial Corporation;
James E. Stuckey; Charles H. Schools, Defendants.
ALLIANCE DEVELOPMENT CORPORATION, Plaintiff-Appellant,
v.
McDEVITT & STREET COMPANY, INC.; Kevin Pyle; Walter
Zaremba; Zaremba Tysons Corner Co., general
partners trading under the name "Tysons
Corner Associates", Defendants-Appellees,
and
Earthmovers, Inc.; Pan American Financial Corporation;
James E. Stuckey; Charles H. Schools, Defendants.
 Nos. 87-3524, 88-3572.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 5, 1988.
Decided: April 4, 1989.
Rehearing and Rehearing En Banc Denied April 25, 1989.
 
 Karl William Viehe (Stefan C. Long, on brief), for appellant.
 Jeffrey Stuart Craigmile (V. Frederic Lyon, Lyon and McManus, on brief), for appellees.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 This case comes to us on appeal from the district court's grant of summary judgment for the defendants, McDevitt & Street and Tysons Corner Associates, and from the court's denial of plaintiff Alliance Development's motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure. We affirm on both issues.
 
 
 2
 In August 1985, McDevitt & Street entered into a contract with Tysons Corner Associates under which McDevitt would serve as the general contractor for the construction of a twin-tower office project in Fairfax, Va. McDevitt then subcontracted with Earthmovers, Inc., (a first-tier subcontractor) to perform excavation work on the project. Earthmovers, in turn, then subcontracted with Alliance Development Corp. (a second-tier subcontractor) to provide trucking and hauling services in connection with excavation work on the project.
 
 
 3
 Earthmovers failed to complete its work on the project and the excavation work was completed by McDevitt. On January 2, 1986, Alliance recorded a mechanic's lien for $632,242.93 against the project. It claimed that Earthmovers had failed to furnish required labor and materials and failed to make payments due under the contract. Subsequently, Alliance agreed to release the lien in exchange for a letter of credit from McDevitt payable to Alliance if a court of competent jurisdiction found the January 2nd lien was valid.
 
 
 4
 On May 29, 1986, Alliance brought suit in the United States District Court for the Eastern District of Virginia seeking a determination that the lien was valid and seeking enforcement of the letter of credit. Also pending in the Eastern District of Virginia was a suit brought by McDevitt against Earthmovers and its sureties, Charles H. Schools and James E. Stuckey, (McDevitt v. Schools ) for damages arising out of Earthmovers failure to perform its subcontract with McDevitt.
 
 
 5
 The parties agree that Virginia law limits the amount for which a second-tier subcontractor can perfect a lien against a project to the amount the first-tier subcontractor could claim against the general contractor at the time notice of lien is given to the general contractor. Code of Virginia Sec. 43-9.[1] See Waterval v. William Doolan Elevators, 181 S.E.2d 637, 639 (Va.1971); John T. Wilson Co. v. McManus, 173 S.E. 361, 362-63 (Va.1934); Southern Residence Corp. v. City Supply Co., 169 S.E. 579, 582 (Va.1933).[2]
 
 
 6
 Based on this law, McDevitt claimed that Alliance's lien was not valid because McDevitt owed nothing to Earthmovers for its work on the Tysons Corner project. In support of the motion, McDevitt offered the affidavit of its current Tysons Corner project manager, Steven H. Skinner. Skinner's affidavit stated that of the $1,515,982 adjusted subcontract price, McDevitt had paid $1,155,913.45 to Earthmovers before its default. Additionally, McDevitt had paid $130,522.47 to Earthmovers' suppliers of labor, equipment and materials. After the default, according to Skinner, McDevitt spent more than $800,000 to complete the excavation work called for under its subcontract with Earthmovers. Thus, McDevitt argued that any amount of the subcontract price which it might have owed Earthmovers at the time of the filing of the lien was more than offset by the cost of completing the excavation work after Earthmovers' default.
 
 
 7
 Alliance opposed the motion for summary judgment claiming that there was a genuine issue as to what, if any, sum McDevitt owed Earthmovers.[3] At the motions hearing, Alliance also argued that entry of summary judgment in the case would be premature since discovery remained incomplete. Alliance based this claim on a set of interrogatories which it had sent to McDevitt in August, but which remained unanswered because Alliance had granted McDevitt an extension of time prior to the filing of the motion for summary judgment.
 
 
 8
 The district court held that Alliance had failed to make a sufficient showing that a genuine issue of fact existed as to whether McDevitt owed any sum to Earthmovers, and it awarded summary judgment against Alliance.
 
 
 9
 On January 20, 1987, the jury in the related case, McDevitt v. Schools, found that Earthmovers owed McDevitt $800,000 for completion of the excavation work on the Tysons Corner project. During the course of the Schools trial, counsel for Stuckey cross-examined Skinner on a discrepancy between his testimony and an earlier deposition statement concerning what, if any, amount of money was owed Earthmovers for work it performed on the Tysons Corner project prior to its default. In the transcript of his deposition, Skinner was quoted as saying $141,000 was owed Earthmovers; at trial, Skinner claimed this was incorrect, and that the correct figure was $41,000.
 
 
 10
 Based on this testimony, Alliance filed a Rule 60(b) motion for relief from judgment on the basis of newly discovered evidence. Alliance claimed Skinner's testimony proved that, at the time summary judgment was entered, there was a dispute as to what amount McDevitt owed Earthmovers, and, thus, summary judgment was improperly granted. The district court denied the motion, saying that with due diligence this evidence could have been discovered prior to the entry of summary judgment.
 
 
 11
 Alliance appeals to this court, citing error in the awarding of summary judgment and in the court's refusal to grant its Rule 60(b) motion. Alliance's attack on the grant of summary judgment is that it was improper while "important, relevant" discovery remained. We agree that, in general, a plaintiff should have the right to use discovery to produce an issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Morrissey v. William Morrow and Co., 739 F.2d 962, 966 (4th Cir.1984); Johnson v. RAC Corp., 491 F.2d 510, 514 (4th Cir.1974). Also, a defendant who has failed to answer relevant and timely interrogatories normally should be in no position to obtain summary judgment. Bane v. Spencer, 393 F.2d 108, 109 (1st Cir.1968). However, all this assumes the interrogatories are relevant to the issue which is being considered on summary judgment.
 
 
 12
 Alliance argues that it was improper for the district court to enter summary judgment in this case while its interrogatories to McDevitt remained unanswered. Unfortunately, we have no way of knowing whether the outstanding interrogatories were relevant to the issue before the court on summary judgment. Despite the importance now placed on these interrogatories by the appellant, we have examined the record in the case and have not found a copy of the interrogatories.[4] Thus, even if the court's action was in error, a conclusion we do not suggest, we have no basis for saying it was and therefore uphold its decision granting summary judgment. The record simply does not support the proposition that any such error was prejudicial.[5]
 
 
 13
 We also cannot say that the district court abused its discretion in denying Alliance's Rule 60(b) motion for relief from judgment. The newly discovered evidence which Alliance asserts as a basis for its motion was considered along with all the other evidence in the related case McDevitt v. Schools, and the jury came back with a verdict of $800,000 in favor of McDevitt.[6] Even if we accept Alliance's argument that $141,000 of the initial contract price on the Tysons Corner project was unpaid at the time the lien was filed, this would not have changed the result in the decision on the summary judgment motion since McDevitt's cost of completion was far greater, and in fact McDevitt owed nothing to Earthmovers.[7] It is not an abuse of discretion to deny a motion for relief from judgment when the newly discovered evidence would not have changed the result in the case. Union Bleachery v. United States, 176 F.2d 517, 519 (4th Cir.1949).
 
 
 14
 Accordingly, the judgments of the district court are AFFIRMED.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 15
 I respectfully dissent because I believe that the majority has failed to focus on the evidence of an indebtedness owed by McDevitt to Earthmovers as of the date on which Alliance gave notice of its claim. In my view, a genuine issue remained as to whether McDevitt owed anything as of January 3, 1986, for work performed by Earthmovers through that date. Therefore, I would reverse the judgment below and remand the case to the district court for further proceedings.
 
 
 16
 The majority relies on events which occurred subsequent to January 3, 1986, to support its finding that Alliance's lien was invalid. Earthmovers eventually defaulted by failing to complete the excavation work, but McDevitt's payment of more than seventy-five percent of the total contract price suggests that substantial work had been performed by Earthmovers and its subcontractors prior to default in February, 1986. The record does not contain certain crucial information such as how much work had been completed under the excavation contract as of January 3, 1986, and how much had been paid to Earthmovers by McDevitt as of that date. Alliance's lien would be valid to the extent that the value of the excavation work performed through January 3, 1986, exceeded the amount paid by McDevitt to Earthmovers as of that date. In other words, Alliance's lien is good to the extent of Earthmovers' claim against McDevitt as of January 3, 1986. If McDevitt continued to pay Earthmovers (and the owner continued to pay McDevitt) even after receiving notice of Alliance's claim, Alliance surely cannot be made to suffer because such payments were unwarranted. Whether McDevitt had to expend additional amounts to complete the project is immaterial; under Code of Virginia Sec. 43-7,[1] the inquiry is directed solely to matters as they existed on January 3, 1986.[2] I would reverse the judgment of the lower court and remand to allow additional discovery to proceed.
 
 
 
 [1]
 The statute provides:
 Any person performing labor or furnishing materials for a subcontractor, in order to perfect the lien given him by Sec. 43-3, shall comply with the provisions of Sec. 43-4, and in addition thereto give notice in writing to the owner of the property, or his agent, and to the general contractor, or his agent, of the amount and character of his claim. But the amount for which a lien may be perfected by such a person shall not exceed the amount for which such subcontractor could himself claim a lien under Sec. 43-7. (Emphasis added).
 
 
 [2]
 If an owner of a construction project must complete any part of the project because of the failure or refusal of the contractor to complete the work, Code of Virginia Sec. 43-16 gives priority to the amount so spent by the owner over all mechanic's liens on the property, and Virginia case law gives this statute literal effect. See Knight v. Ferrante, 117 S.E.2d 283, 288 (1960). Logic tells us that if the owner can so credit the cost of completion against any mechanic's liens, the general contractor should have a similar right. But the Virginia Supreme Court apparently has not considered that proposition, so we do not depend on it in reaching our decision in this case
 
 
 [3]
 Attached to the memorandum in opposition were partial transcripts of the discovery depositions of Harry Joseph Knackstedt, former Tysons Corner project manager for McDevitt, and Tammy Adele Norman, Earthmovers' president, taken in the related case of McDevitt v. Schools. Alliance claimed that statements made in these depositions disputed McDevitt's assertion that nothing was owed Earthmovers for its work on the Tysons Corner project
 
 
 [4]
 We are aware that a pretrial scheduling order stated that discovery papers would not be filed with the court. But, when such papers are relied upon, a disclosure of their contents is mandatory
 
 
 [5]
 The $800,000 judgment in favor of McDevitt against Earthmovers also supports the proposition that any such error was harmless. See the text and notes following
 
 
 [6]
 Judgment on the jury's verdict was upheld on appeal in an unpublished opinion. McDevitt v. Schools, No. 87-1051 (4th Cir. April 27, 1988)
 
 
 [7]
 In ruling on a Rule 60(b) motion for relief from judgment, a court may refer to related litigation. U.S.F. & G. v. Lawrenson, 334 F.2d 464, 467 (4th Cir.1964)
 
 
 [1]
 The statute reads in pertinent part:
 But the amount for which a subcontractor may perfect a lien under this section shall not exceed the amount in which an owner is indebted to the general contractor at the time the notice is given ... (Emphasis added)
 John T. Wilson Co. v. McManus, 181 S.E. 637 (Va.1934) teaches that a second-tier subcontractor is entitled to a lien against the property to the extent the general contractor is indebted to the first-tier subcontractor at the time the notice of lien is served.
 
 
 [2]
 The majority's treatment of Sec. 43-16 of the Code of Virginia is misleading. Slip Op. 5, n. 2. Although reliance on it is expressly denied, this statute is the only authority cited by the majority in support of the proposition that McDevitt's costs of completion negated whatever lien may have existed on January 3, 1986. By its express terms, however, Sec. 43-16 protects only the owner from incurring double payments if he is forced to complete a project after a default by the general contractor. Nothing in logic or the law indicates that such protection was intended to cover the situation in which the general contractor is forced to expend additional amounts to complete the work of a defaulting subcontractor